STATE OF NORTH CAROLINA v. BOB MEDLIN

No. 8614SC883

(Filed 16 June 1987)

**1. Conspiracy § 6— conspiracy to commit breakings or enterings—seven judgments vacated—single plan to commit ongoing series of breakings or enterings**

Three judgments on seven conspiracy to break and enter convictions were vacated and remanded for entry of one judgment where the charges arose out of ten break-ins at several related stores; all of the break-ins occurred within four months, and some within ten days of each other; the participants remained the same; the participants pursued the same objective throughout; meetings generally took place after break-ins to divide the spoils and to discuss the next break-in; and the gist of the meetings was to plan subsequent break-ins in furtherance of the original unlawful agreement.

**2. Conspiracy § 8— conspiracy to commit felonious breakings or enterings—Class J felony**

The trial court erred when sentencing defendant on convictions for conspiracy to commit felonious breaking or entering by sentencing defendant as a Class H rather than a Class J felon.

**3. Receiving Stolen Goods § 2; Indictment and Warrant §§ 17.4, 11.1— indictment for criminal possession of personal property—allegation of ownership—not fatally defective**

An indictment for criminal possession of personal property of "Norman's T.V." was not fatally defective for failure to allege ownership of property in a natural person capable of holding title to the property and there was not a fatal variance between the indictment and the evidence where the evidence at trial showed an ownership interest in the stolen property in Norman Shultz. The name of the person from whom goods were stolen is not an essential element of an indictment alleging possession of stolen goods, nor is a variance between the indictment's allegations of ownership of property and proof of ownership fatal.

**4. Burglary and Unlawful Breakings § 5.9— breaking or entering—defendant not physically inside buildings—evidence sufficient**

The evidence was sufficient to support three breaking or entering convictions even though defendant did not physically enter the buildings where defendant drove his truck to one store after an accomplice telephoned him, he gave the accomplice tools to break the lock on the rear door, received merchandise through a hole in the store window, and loaded the goods into his truck; defendant agreed beforehand to drive his truck to another store, indicated when he arrived that he did not want radios, and the accomplice passed television sets through a broken window for defendant to load on his truck; and, during the third break-in, defendant parked his truck in an adjacent parking lot, gave the accomplice a hammer with which to dismantle the store's alarm, waited outside, and drove away when the accomplice awakened a sleeping employee and ran away.

APPEAL by defendant from *Lee, Judge.* Order entered 17 February 1986 in Superior Court, DURHAM County. Heard in the Court of Appeals 10 February 1987.

This case arises out of ten break-ins at several retail stores in Durham, North Carolina, that occurred during the summer of 1985. On 4 November 1985, defendant was indicted on ten counts of felonious breaking or entering, nine counts of felonious larceny, nine counts of felonious possession of stolen property, and ten counts of conspiracy to break or enter. Over defendant's objection, the cases were consolidated for trial upon motion by the State. At the close of the evidence the trial court dismissed two counts of felonious larceny, two counts of felonious breaking or entering, and two counts of conspiracy to break or enter. On 14 February 1986, the jury returned guilty verdicts on six counts of felonious breaking or entering, six counts of felonious larceny, six counts of felonious possession of stolen property, and seven counts of conspiracy to break or enter. At sentencing on 17 February 1986, the trial court arrested judgment on six counts of felonious larceny. The remaining nineteen counts were consolidated into seven judgments. The trial court sentenced defendant to consecutive three-year prison sentences on each judgment for a total term of twenty-one years.

## NATURE OF THE CHARGES

Seven retail stores in Durham were broken into between 4 May and 24 August 1985, with some stores being broken into more than once. Ten break-ins in all were charged. The stores broken into included Center Furniture, Bargain Furniture, Norman's T.V., Deluxe Products, Books-Do-Furnish-A-Room, Penny Furniture, and Wright Furniture. Property was taken from each store during each break-in except for Wright Furniture. For each break-in, except at Wright Furniture, defendant was charged with felonious breaking or entering, felonious larceny, possession of stolen property, and conspiracy to break or enter. For the break-in at Wright Furniture, defendant was charged with felonious breaking or entering and conspiracy to break or enter.

The following chart chronologically arranges the charges and dispositions of the cases:

**State v. Medlin**

| CASE NO. | COUNT | DATE | OFFENSE CHARGED | VICTIM ALLEGED | VERDICT |
|---|---|---|---|---|---|
| 32364 | 1 | 5/4/85 | B & E | Center | Guilty |
| | 2 | | Larceny | | Guilty |
| | 3 | | Possession | | Guilty |
| 32366 | | 5/4/85 | Conspiracy | Center | Guilty |
| 32367 | 1 | 6/1/85 | B & E | Bargain | Guilty |
| | 2 | | Larceny | | Guilty |
| | 3 | | Possession | | Guilty |
| 32365 | | 6/1/85 | Conspiracy | Bargain | Guilty |
| 32369 | 1 | 6/10/85 | B & E | Bargain | Guilty |
| | 2 | | Larceny | | Guilty |
| | 3 | | Possession | | Guilty |
| 32368 | | 6/10/85 | Conspiracy | Bargain | Guilty |
| 32613 | 1 | 6/16/85 | B & E | Penny | Not Guilty |
| | 2 | | Larceny | | Not Guilty |
| | 3 | | Possession | | Not Guilty |
| 32615 | | 6/16/85 | Conspiracy | Penny | Guilty |
| 32371 | 1 | 7/4/85 | B & E | Bargain | Guilty |
| | 2 | | Larceny | | Guilty |
| | 3 | | Possession | | Guilty |
| 32370 | | 7/4/85 | Conspiracy | Bargain | Guilty |
| 32618 | | 7/27/85 | B & E | W.B. Wright | Guilty |
| 32619 | | 7/27/85 | Conspiracy | W.B. Wright | Guilty |
| 32373 | 1 | 8/12/85 | B & E | Norman's | Not Guilty |
| | 2 | | Larceny | | Guilty |
| | 3 | | Possession | | Guilty |
| 32372 | | 8/12/85 | Conspiracy | Norman's | Not Guilty |
| 32375 | 1 | 8/22/85 | B & E | Deluxe | Dismissed |
| | 2 | | Larceny | | Dismissed |
| | 3 | | Possession | | Not Guilty |
| 32374 | | 8/22/85 | Conspiracy | Deluxe | Dismissed |

State v. Medlin

| CASE NO. | COUNT | DATE | OFFENSE CHARGED | VICTIM ALLEGED | VERDICT |
|---|---|---|---|---|---|
| 32377 | 1 | 8/22/85 | B & E | Books | Dismissed |
|  | 2 |  | Larceny |  | Dismissed |
|  | 3 |  | Possession |  | Not Guilty |
| 32376 |  | 8/22/85 | Conspiracy | Books | Dismissed |
| 32612 | 1 | 8/24/85 | B & E | Penny | Guilty |
|  | 2 |  | Larceny |  | Guilty |
|  | 3 |  | Possession |  | Guilty |
| 32616 |  | 8/24/85 | Conspiracy | Penny | Guilty |

All of the charges relating to the break-ins at Deluxe Products and Books-Do-Furnish-A-Room on August 22, 1985 were either dismissed by the trial court at the close of the evidence or resulted in a not guilty verdict by the jury. The description of the facts that follows is limited to the other eight break-ins.

STATE'S EVIDENCE AS TO BREAKING OR ENTERING AND LARCENY

The State's evidence tended to show the following:

Mr. Wade Penny, president of three companies operating as Penny Furniture, Center Furniture, and Bargain Furniture Stores in Durham, North Carolina, testified for the State that he received a phone call at about 3:00 a.m. on Sunday, 5 May 1985, reporting a break-in at Center Furniture. When he got to the store, he found that a glass panel on the right side of the entrance had been broken. An inventory conducted on Monday by the store manager, Marvin Barber, showed that seven Hitachi radio/cassette players, one 12″ color television set, and some money from a change drawer were missing.

Mr. Penny received a telephone call at about 4:00 a.m. on 2 June 1985, reporting another break-in at Bargain Furniture. When he arrived at the store, he found a lower glass panel in the entrance had been broken with a concrete block. The store manager, Tom Davis, did an inventory later that morning. Three 12″ black-and-white television sets with AM/FM radios, one Hitachi radio/cassette player, and some cash were missing.

When Tom Davis arrived at Bargain Furniture on 10 June 1985, he found one of the glass panels in the entrance had been

broken. Davis entered the store and called the police. A number of items of merchandise were found on a hand truck in the basement. An inventory of the store showed that three Hitachi radio/cassette players were missing from the store.

On Sunday, 16 June 1985, Mr. Penny received a call reporting a break-in at Penny Furniture. Mr. Penny called Fred Baker, the store manager, and met him at the store. The lower left third of the plate glass window had been broken out. The inventory conducted by the store manager showed that four Hitachi radio/cassette players and seven television sets were missing.

Shortly after midnight on 4 July 1985, Mr. Penny got a call reporting a third break-in at Bargain Furniture. He called the store manager. When Mr. Penny and the manager arrived at the store, they found that the bottom portion of a window in the entrance had been broken with a piece of concrete. An inventory of the store conducted by the manager showed that four General Electric televisions, three Hitachi radio/cassette players, one Sanyo radio, and one Aria radio were missing.

Larry Madden, manager of Wright Furniture, was working late at the store on the night of 27 July 1985. After finishing work he turned out the lights and went to sleep in the office. He was awakened by the sound of glass breaking. He jumped up and tried to turn on the lights, but the lights would not come on. He saw a man in the store. Madden yelled, and the man jumped out of a hole in the store window and fled. Madden called the police.

Madden testified that after the police arrived at the store, they received a call about a man at the Yellow Cab Company in Durham, who had sustained some cuts on his body. The police took Madden with them to the cab company. Madden said he identified the man at the cab company as the man he had seen inside the store. The man Madden identified at the cab company was Walter Cox, whom Madden also identified at trial as the man who had broken into Wright Furniture the night of 27 July 1985.

At the time these break-ins were occurring, Norman Shultz owned Norman's T.V. When he went to the store on Monday, 12 August 1985, he found a hole in the bottom half of the front door. He entered the store and called the police. Mr. Shultz found that two radio/cassette players, one 5" Sony television set, some clothes, and a bottle of pills were missing.

At about 5:30 a.m. on 24 August 1985, Wade Penny got a telephone call reporting a second break-in at Penny Furniture. He called the store manager, Fred Baker, and met him at the store. The glass on the right side of the entrance had been broken. An inventory of the store showed that one 13″ color television set, one 19″ color television set, one used color television set, and five Hitachi radio/cassette players were missing.

### STATE'S EVIDENCE LINKING DEFENDANT TO BREAKING OR

### ENTERING, LARCENY AND CONSPIRACY

Cox testified that on 24 August 1985, he contacted Detective Hester of the Durham Public Safety Department and told the detective that he had been involved in several break-ins with defendant and another individual named Leslie Williams. Cox admitted to having pled guilty to breaking or entering into DeShazor's Beauty Salon with Williams in Durham earlier that month, and to having entered into a plea agreement to testify against defendant in exchange for a "lighter sentence" on the other charges.

Cox and Williams testified at trial for the State as to their involvement with defendant in the charged break-ins as follows:

In addition to his employment at IBM, defendant operated a business called Bob's Thrifty Shop at 526 East Main Street in Durham. Cox and Williams both spent time "hanging around" defendant's store. Cox testified that at the beginning of the summer he was selling cameras and watches to defendant. Cox testified that defendant suggested that Cox look around for some "good stuff" like televisions; that defendant was able to sell televisions and good radios; and that Cox could make some more money and not have to "hang around with winos." Cox testified that he told defendant that he had seen some places he could break into and asked defendant to go with him. Defendant said he would not commit any break-ins. Cox testified that defendant offered to let him have some tools. Cox further testified that defendant said to call him if Cox needed some help "getting the stuff," and gave Cox his telephone number.

Cox then testified as to a series of break-ins executed in essentially the same manner; late at night Cox alone or Cox and

Williams would throw a heavy object through the window of a retail store in downtown Durham and crawl through the hole into the store; Cox would locate televisions, radios and other merchandise inside and then call defendant from a telephone in the store; defendant would drive a truck to the store and either enter the building and carry out the merchandise with the others, or wait outside for the others to carry the merchandise out of the store; defendant would then help the others load the merchandise onto his truck and drive away.

On 31 August 1985, Cox telephoned the Durham Public Safety Department and told police when and where he was going to deliver two stolen televisions to defendant. Police watched the area. At about 4:30 a.m., police saw defendant's truck pull up to the area where Cox hid the televisions. A man got out of the truck and placed the televisions onto the back of the truck. The police moved in. The truck immediately drove off. The man who got out of the truck fled on foot. None of the officers could identify defendant as either the driver of the truck or the man who fled on foot.

Detectives called defendant at his home a half an hour later and said they had watched him take the two televisions. Defendant denied any knowledge of this. Later that morning police obtained a search warrant and searched defendant's residence. They did not find the televisions in defendant's house.

Defendant did not present any evidence. From the convictions and prison sentences totaling twenty-one years, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General R. Bryant Wall, for the State.*

*Glover & Peterson, P.A., by James R. Glover, for defendant appellant.*

JOHNSON, Judge.

Defendant raises four of his original twelve Assignments of Error on appeal, as well as an additional Assignment of Error number thirteen upon our granting of defendant's motion to amend the record. All other Assignments of Error not raised on appeal are deemed abandoned. Rule 28(b)(5), N.C. Rules App. P.

# I

## A

[1] Defendant's fifth Assignment of Error raises the issue of whether he could be lawfully convicted of seven counts of conspiracy to break or enter on these facts. He argues that the evidence does not show seven separate and distinct transactions, but rather shows a single scheme or plan to commit an ongoing series of felonious breakings or enterings. Based on this argument, defendant asks this Court to vacate the three judgments for multiple conspiracies and remand for entry of a single judgment on one count of conspiracy. The State argues on appeal that the evidence is sufficient to sustain defendant's convictions on seven counts of conspiracy to break or enter, and asks us to affirm these convictions and not to disturb the judgments.

The charges against defendant arise out of ten break-ins committed at several retail stores in Durham between 4 May 1985 and 24 August 1985. The evidence tends to show that all the break-ins occurred in essentially the same manner: Walter Cox, alone or with Leslie Williams, would break a store window and climb through the hole into the store. Once inside, Cox would telephone defendant. Defendant then drove his truck to the store to help carry away televisions and radios from the premises. For each of the break-ins, defendant was charged in separate indictments for conspiring with Cox (and in three indictments with Leslie Williams) to commit felonious breaking or entering. Defendant was eventually convicted of seven of these conspiracy charges, which were consolidated into three judgments of three years to be served consecutively.

The essence of the crime of conspiracy is the agreement to commit a substantive crime. *State v. Rozier*, 69 N.C. App. 38, 52, 316 S.E. 2d 893, 902, *cert. denied*, 312 N.C. 88, 321 S.E. 2d 907 (1984). No overt act is required in furtherance of the conspiracy. *State v. Nicholson*, 78 N.C. App. 398, 401, 337 S.E. 2d 654, 657 (1985). When the evidence shows a series of agreements or acts constituting a *single* conspiracy, a defendant cannot be prosecuted on multiple conspiracy indictments consistent with the constitutional prohibition against double jeopardy. *United States v. Kissel*, 218 U.S. 601, 54 L.Ed. 1168, 31 S.Ct. 124 (1910).

Although the offense of conspiracy is complete upon formation of the unlawful agreement, the offense continues until the conspiracy comes to fruition or is abandoned. *State v. Conrad*, 275 N.C. 342, 347, 168 S.E. 2d 39, 43 (1969). A single conspiracy may, and often does, consist of a series of different offenses. *State v. Brewer*, 258 N.C. 533, 540, 129 S.E. 2d 262, 267 (1963).

Although we have previously said that there is "no simple test for determining whether single or multiple conspiracies are involved" in a particular case, *Rozier, supra*, at 52, 316 S.E. 2d at 902, factors such as time intervals, participants, objectives, and number of meetings must be considered. *Id.*

Applying the four factors from *Rozier, supra*, to the facts in the case *sub judice*, we find ample evidence of a single conspiracy to feloniously break or enter the various Durham retail stores. All of the break-ins occurred within four months, and some within ten days of each other. The participants — defendant, Cox, and Williams in three instances — remained the same. The participants pursued the same objective throughout; to steal televisions and radios from local Durham retail stores. Meetings generally took place after break-ins to divide the spoils and discuss the next break-in. For example, on 1 June 1985, the night of the first break-in at Bargain Furniture, Cox testified that he and defendant discussed breaking into *"another* furniture store located across from *the same one I had been in* [Center Furniture] . . . This is Bargain Furniture I'm talking about now." The gist of the meetings was to plan subsequent break-ins in furtherance of the original unlawful agreement made sometime before the first break-in. We are hard pressed to find facts more clearly telling of an ongoing series of acts in furtherance of a single conspiracy to break or enter. Rather than show ten separate conspiracies to break or enter on ten separate occasions as the State contends, these facts show one unlawful agreement to break or enter as many times as the participants could get away with. But for Cox's cooperation with Durham police, defendant and Cox would have presumably kept on breaking into and stealing from the same or similar stores. The State's argument that each conversation that Cox and defendant had between break-ins constituted a separate agreement to break or enter is not supported by the evidence. Even the prosecutor said at trial during the hearing on defendant's motion to dismiss the charges as to the Deluxe Prod-

ucts break-in that "the date on this one [Deluxe Products] *is getting late in the conspiracy, August 22."* (Emphasis supplied.)

We find that the evidence supports defendant's Assignment of Error as to the judgments and sentencing on multiple conspiracies, and hereby vacate the three judgments on the seven conspiracy convictions (Case Nos. 85CRS32365, 32366, 32368, 32615, 32616, 32619, 32370), and remand with instructions to the trial court to enter judgment on conspiracy to commit felonious breaking or entering in Case No. 85CRS32366.

B

[2] Defendant's thirteenth Assignment of Error, raised in his motion to this Court to amend the record, raises the issue of whether the trial court properly entered judgment on the conspiracy convictions as Class H Felonies with a maximum term of ten years and a presumptive term of three years. Defendant contends that conspiracy to commit felonious breaking or entering is punishable as a Class J Felony. We agree.

The trial court sentenced defendant to three years on each judgment as to the conspiracy convictions. The judgment and commitment forms in the record show the trial court delineated each "Conspiracy to commit B & E" conviction as a Class H Felony, which class of felony is punishable by a maximum ten-year prison term with a presumptive three-year prison term. As noted in the State's brief and defendant's motion to amend the record on appeal, G.S. 14-2.401 provides that a *conspiracy* to commit a Class H Felony, such as felonious breaking or entering under G.S. 14-54(a), is punishable as a Class J Felony by a maximum term of three years with a presumptive term of one year. We find that the trial court erred by sentencing defendant as a Class H Felon on the conspiracy counts. Upon remand defendant shall be resentenced as a Class J Felon on one count of conspiracy to commit felonious breaking or entering.

II

[3] Defendant's tenth and eleventh Assignments of Error raise the issue of whether the indictment for criminal possession of personal property of "Norman's T.V." (No. 32373) is fatally defective for failure to allege ownership of the property in a natural person

or entity capable of holding title to the property. We find no merit to defendant's Assignments of Error.

Counts two and three of the indictment in case No. 85CRS32373 charged defendant with larceny and possession of stolen televisions and radios which were the property of "Norman's T.V." Evidence at trial showed an ownership interest in the stolen property in Norman Shultz. The jury convicted defendant of the larceny and criminal possession charges, and the trial court arrested judgment on the larceny charge. Defendant contends that the variance between the indictment and the evidence is fatal. We disagree.

While the parties have not found a case involving an indictment under our criminal possession statute G.S. 14-71.1, we have recognized the similarity between that statute and the receiving stolen goods statute. We held in *State v. Taylor*, 64 N.C. App. 165, 169, 307 S.E. 2d 173, 176 (1983), *rev'd in part*, 311 N.C. 380, 317 S.E. 2d 369 (1984), that, as to knowledge or belief that goods were stolen, "the standard of proof established in cases of receiving stolen goods is equally applicable in cases involving possessing stolen goods." In cases of receiving stolen goods, it has never been necessary to allege the names of the persons from whom the goods were stolen, *State v. Truesdale*, 13 N.C. App. 622, 625, 186 S.E. 2d 604, 606 (1972), nor has a variance between an allegation of ownership in the receiving indictment and proof of ownership been held to be fatal. *State v. Golden*, 20 N.C. App. 451, 453, 201 S.E. 2d 546, 548, *cert. denied*, 285 N.C. 88, 203 S.E. 2d 60 (1974). We now hold that the name of the person from whom goods were stolen is not an essential element of an indictment alleging possession of stolen goods, nor is a variance between the indictments' allegations of ownership of property and the proof of ownership fatal.

Applying our holding to the case *sub judice*, we find the indictment alleging that defendant unlawfully possessed the personal property of Norman's T.V. sufficient to withstand defendant's Assignments of Error, and find further that the variance between the indictment above and the evidence at trial showing that the property was owned by Norman Shultz is not fatally defective. Defendant's Assignments of Error in this regard are overruled.

## III

**[4]** Defendant's ninth Assignment of Error raises the issue of whether the State's evidence at trial was sufficient to prove defendant guilty of breaking or entering into Bargain Furniture on 10 June 1985 (85CRS32369), and on 4 July 1985 (85CRS32371), and Wright Furniture on 27 July 1985 (85CRS32618). We find the State's evidence sufficient to establish defendant's guilt in all three charges and overrule his Assignment of Error.

The State did not offer any evidence that defendant actually entered the buildings during the commission of these three crimes, but instead alleged that defendant aided and abetted the breaking or entering by Walter Cox. The evidence required to convict an aider and abettor of a specific crime was well summarized by our Supreme Court in *State v. Sanders:*

> The mere presence of the defendant at the scene of the crime, even though he is in sympathy with the criminal act and does nothing to prevent its commission, does not make him guilty of the offense. To support a conviction, the State's evidence must be sufficient to support a finding that the defendant was present, actually or constructively, with the intent to aid the perpetrators in the commission of the offense should his assistance become necessary and that such intent was communicated to the actual perpetrators. The communication or intent to aid, if needed, does not have to be shown by express words of the defendant but may be inferred from his actions and from his relation to the actual perpetrators.

288 N.C. 285, 290-91, 218 S.E. 2d 352, 357 (1975) (citations omitted); *cert. denied,* 423 U.S. 1091, 47 L.Ed. 2d 102, 96 S.Ct. 886 (1976).

With respect to the 10 June 1985 break-in at Bargain Furniture, defendant drove his truck to the store after Cox telephoned him, gave Cox tools to break the lock on the rear door of the store, then received merchandise through the hole in the store window, and loaded the goods onto his truck. During the 4 July 1985 break-in at Bargain, defendant agreed beforehand to drive his truck to the store. When defendant arrived at the store, Cox told defendant the store contained some televisions and "some Hitachi radios again." Defendant said, "I don't want no radios," whereupon Cox entered the store through a broken win-

dow and passed television sets out to defendant to load them onto his truck. During the 27 July 1985 break-in at Wright Furniture, defendant parked his truck in an adjacent parking lot, gave Cox a hammer with which to disarm the store's alarm, and waited outside. While inside, Cox awakened a sleeping employee. Cox fled the building. Defendant got into his truck and drove away. We find that this evidence clearly shows that defendant was actually present at the scene in each of the three break-ins at issue, and clearly communicated his intent to aid Cox and Williams in breaking or entering the stores. We find that the evidence unequivocally supports defendant's convictions on each of these three breaking or entering charges since the evidence shows he aided and abetted the principal perpetrators and is, therefore, equally culpable even though he did not physically enter the buildings.

In summary, cases:

85CRS32364, 32367, 32369, 32371, 32612, 32373, 32618 — No error.

85CRS32365, 32366, 32368, 32615, 32616, 32619, 32370 — Judgments vacated.

85CRS32366 — Remanded for resentencing.

Judges BECTON and PHILLIPS concur.