STATE OF NORTH CAROLINA v. VERNON FOREST WILSON, JR.

No. 9114SC664

(Filed 2 June 1992)

1. Conspiracy § 44 (NCI4th) — armed robberies — single conspiracy

Defendant could properly be convicted only for a single conspiracy to commit a series of armed robberies, and three of the four conspiracy convictions against defendant must be vacated and the case remanded for entry of a single judgment on one count of conspiracy, where the evidence tended to show that the participants intended to commit the robberies to acquire cash; the participants were the same each time; the robberies occurred over a two week period; three of the four robberies involved commercial establishments; and in each case the participants were armed, wore masks and gloves, forced those present to lie face down on the floor, and primarily took cash.

Am Jur 2d, Conspiracy § 11.

STATE v. WILSON

[106 N.C. App. 342 (1992)]

2. **Receiving Stolen Goods § 5.1 (NCI3d)— possession of stolen property—knowledge that property stolen**

The State presented sufficient evidence in a prosecution for possession of stolen property to show that defendant knew or had reasonable grounds to believe that a pistol he possessed was stolen where it tended to show that the pistol was stolen during a break-in of a residence; defendant used the pistol in a subsequent robbery; when officers chased an automobile occupied by defendant and another person, defendant took the pistol from his coat and gave it to the other person to dispose of; and officers subsequently found the automobile abandoned and the pistol lying on the ground nearby.

**Am Jur 2d, Criminal Law § 136.**

3. **Evidence and Witnesses § 300 (NCI4th)— conviction thirteen years earlier—similarity and remoteness—admissibility to show modus operandi, motive and identity**

Evidence of defendant's 1975 conviction of armed robbery was sufficiently similar to the crimes charged and not too remote to be admissible in defendant's trial for six 1988 robberies for the purpose of showing modus operandi, motive and identity where defendant was armed, wore a ski mask and gloves, ordered the people present to lie face down on the floor, and took cash in both the 1975 and 1988 robberies, and defendant spent eight of the thirteen years between 1975 and 1988 in prison.

**Am Jur 2d, Evidence § 326.**

**Robbery: Admissibility in robbery prosecution of evidence of other robberies. 42 ALR2d 854.**

APPEAL by defendant from judgments and commitments entered 21 November 1990 by *Judge Orlando F. Hudson* in DURHAM County Superior Court. Heard in the Court of Appeals 7 April 1992.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Valerie B. Spalding, for the State.*

*Appellate Defender Malcolm Ray Hunter, by Assistant Appellate Defender Teresa A. McHugh, for defendant-appellant.*

STATE v. WILSON

[106 N.C. App. 342 (1992)]

LEWIS, Judge.

Defendant was convicted by a jury of first degree burglary, attempted armed robbery, possession of stolen property, six counts of armed robbery, and four counts of conspiracy to commit armed robbery. Defendant appeals three of the conspiracy convictions and the conviction for possession of stolen property.

The evidence presented at trial tended to show that a series of robberies occurred in and around Durham during a two week period in December 1988. On 14 December 1988, someone broke into the Tollison residence and stole a pearl-handled pistol, jewelry, and Christmas presents. Another private residence, the Lynn household in Durham, was burglarized on 17 December 1988. The Lynns, who were present during the robbery, testified that two armed, masked and gloved men entered their house. As one of the men held a gun on the Lynns, the other "ransacked" the house. The robbers stole money, jewelry and Christmas gifts. At trial, both Mr. and Mrs. Lynn testified that they were unable to distinguish the race of the robbers.

Also during this two week time period, the Pine State Creamery, the Weeping Radish restaurant and brewery, and Rigsbee's Lounge were robbed. In all three instances, men wearing ski masks and gloves and brandishing guns entered the establishments. At Pine State, two men, and at the Weeping Radish and Rigsbee's Lounge three men perpetrated the crimes. In all three instances, the men forced everyone present to lie face down on the floor, and in all three instances the armed men took cash. Witnesses testified that the Pine State robbers were two white males. Witnesses from the Weeping Radish were less sure; one said three white males were involved and another said one was white, one was black and could not identify the race of the third man. Mr. Rigsbee of Rigsbee's Lounge testified that two of the robbers were white but he was unsure about the third.

On 21 December 1988, in the middle of this two week period, Officer Hall of the Durham Police Department observed what he considered to be a "suspicious" situation—a green Buick LaSabre, traveling about twenty to twenty-five miles per hour, occupied by two white males wearing camouflage clothing. Officer Hall and his partner put their blue light on the dashboard of their unmarked car, whereupon the Buick sped away. A chase ensued. Subsequently, the officers found the Buick abandoned, the passenger door

STATE v. WILSON

[106 N.C. App. 342 (1992)]

open and a .25 caliber pearl-handled pistol lying on the ground nearby. Officer Hall testified as to these occurrences at trial, and identified defendant as one of the Buick's occupants.

[1] At trial, the jury convicted defendant of, among other charges, four conspiracies. Defendant assigns as error his convictions for multiple conspiracies, arguing that the facts support only a single conspiracy conviction. Defendant cites as authority for this argument this Court's earlier case, *State v. Medlin*, 86 N.C. App. 114, 357 S.E.2d 174 (1987).

In *Medlin*, the defendant had been convicted by a jury of, among other charges, seven counts of conspiracy to break or enter. These charges arose out of ten break-ins during the summer of 1985 of several retail stores in Durham. In each of the seven break-ins for which defendant was convicted, the evidence tended to show these facts: Either one or two men would break a panel of glass in the store's windows, enter the store through this opening, carry out radios, televisions, and other merchandise, and place the property in defendant's waiting truck. After the break-ins, the participants usually met to discuss the next job and divide the loot. Our Court held that this evidence supported a *single* conspiracy to break or enter various retail stores in Durham. *Id.* at 122, 357 S.E.2d at 179. The judgments and sentencing on multiple conspiracies were vacated and the case remanded with instructions to the trial court to enter judgment on a single conspiracy. *Id.* at 123, 357 S.E.2d at 179. Though not appealed and not yet cited by the Supreme Court, *Medlin* controls here.

According to North Carolina law, a criminal conspiracy is an agreement by two or more persons to perform either an unlawful act or a lawful act in an unlawful manner. *State v. Rozier*, 69 N.C. App. 38, 49, 316 S.E.2d 893, 900, *cert. denied*, 312 N.C. 88, 321 S.E.2d 907 (1984) (citation omitted). Because the crime of conspiracy lies in the agreement itself, and not the commission of the substantive crime, *State v. Looney*, 294 N.C. 1, 240 S.E.2d 612 (1978), a defendant can, under certain fact situations, be convicted of a single conspiracy when there are multiple acts or transactions. *See, e.g., Rozier*, 69 N.C. App. at 52, 316 S.E.2d at 902. To determine whether single or multiple conspiracies are involved, the "essential question is the nature of the agreement or agreements, . . . but factors such as time intervals, participants, objectives, and number of meetings all must be considered." *Id.* Applying

these factors to the present fact situation, we find a single con-
spiracy under *Medlin*.

We find the present case to be legally indistinguishable from
*Medlin*. Andrew Hyde, one of the admitted participants in the
robberies, was a witness for the State in this case. During direct
examination, Hyde testified that a few days before their first rob-
bery of a commercial establishment, the 15 December 1988 robbery
of Pine State Creamery, defendant told him that

> cash money . . . was what it was all about and the onliest
> way to get cash money was in armed robberies. [Defendant]
> said, 'Damn a bunch of property, stealing a bunch of property,
> taking a bunch of property and trying to sell it and you not
> getting nothing compared to what it was worth. . . . You
> really didn't have anything to worry about as long as you
> had a mask over your face and gloves on your hand. . . .
> There's no way that anybody can ever identify you.'

Hyde also testified that once this course of action started, "[w]e
didn't want to stop robbing places. We decided it was to the death.
We just weren't going to stop. It was to the death." We find
these conversations clear evidence that a common scheme of a
single conspiracy to commit armed robberies to acquire cash existed.

In addition, our examination of the *Rozier* factors leads us
to the same conclusion. As in *Medlin*, the participants here were
the same each time. The fact that in two of the robberies the
conspirators solicited the assistance of a third man is inconsequen-
tial. The entering and exiting of various participants in an other-
wise ongoing plan to commit a particular felonious act does not
convert a single conspiracy into several. *See, e.g., State v. Overton*,
60 N.C. App. 1, 13, 298 S.E.2d 695, 710 (1982), *disc. rev. denied*,
307 N.C. 580, 299 S.E.2d 652 (1983). Further, the robberies occurred
over a two week period. The objectives were clear in that the
parties intended to commit armed robbery to acquire cash. This
case differs from *Medlin* in that there is no evidence that the
parties held meetings of their "board" after each robbery. However,
the facts suggest that there was a common scheme at play: First,
we note Hyde's testimony concerning the purpose of armed robbery
for cash; second, we note that "the break-ins occurred in essentially
the same manner." *Medlin*, 86 N.C. App. at 121, 357 S.E.2d at
178. Three of the four robberies involved commercial establishments,
and in each case, the participants were armed, wore masks and

gloves, forced those present to lie face down on the floor, and primarily took cash.

We find that "these facts show one unlawful agreement to break or enter as many times as the participants could get away with." *Id.* at 122, 357 S.E.2d at 179. There was but a "single scheme or plan to commit an ongoing series of felonious breakings or enterings." *Id.* at 121, 357 S.E.2d at 178. Accordingly, we vacate three of the conspiracy convictions against defendant, and remand with instructions to the trial court to resentence defendant on the remaining conspiracy conviction. Given our ruling on this assignment of error, we find it unnecessary to address defendant's second assignment of error on the trial court's failure to instruct the jury as to a single conspiracy.

[2] Defendant also contends that the evidence presented was insufficient to support a conviction for possession of stolen property under N.C.G.S. § 14-71.1 (1986). The elements of this crime are (1) possession of personal property (2) which has been stolen, (3) the possessor knowing or having reasonable grounds to believe the property was stolen, and (4) the possessor acts with dishonest purpose. *Id. See also State v. Perry*, 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982). Possession of a stolen firearm by one who knows or has reasonable grounds to believe it is stolen is a felony. *State v. Taylor*, 311 N.C. 380, 384, 317 S.E.2d 369, 371 (1984).

In the present case, Barbara Tollison testified that a .25 caliber handgun with a pearl handle was stolen from her residence on 14 December 1988. A witness at the Pine State Creamery robbery testified that one of the gunmen was armed with a small .25 caliber pearl-handled pistol. Mr. Lynn testified to the same effect as regards the robbery of his residence. Andrew Hyde testified that defendant used this handgun during the Pine State Creamery robbery, and Officer Hall testified that after chasing the green Buick with defendant inside, he found the pearl-handled pistol lying on the ground near the abandoned car. When the gun was introduced as evidence at trial, Tollison stated, "It looks like the gun that was taken from my bedroom."

Under the evidence as presented, the only element that we need to address is the third. Defendant's guilty knowledge can be implied from the circumstances. *State v. Parker*, 316 N.C. 295, 303, 341 S.E.2d 555, 560 (1986). *Parker* was similar to this case. When police attempted to stop defendant Parker's vehicle, he pro-

ceeded to flee at high speed, then attempted to escape on foot. Our Supreme Court held, "We have recognized that an accused's flight is evidence of consciousness of guilt and therefore of guilt itself." *Id.* at 304, 341 S.E.2d at 560. In *State v. Taylor*, 64 N.C. App. 165, 307 S.E.2d 173 (1983), *modified*, 311 N.C. 380, 317 S.E.2d 369 (1984), we held that evidence that defendant removed a firearm from his coat and threw it into bushes was sufficiently incriminating to permit a reasonable inference that defendant knew the firearm was stolen, and therefore sufficient to go to the jury on that issue. Here, defendant fled from police in the green Buick. Hyde testified that, as in *Taylor*, defendant removed the gun from his coat and gave it to Hyde to dispose of, which he accomplished by throwing the gun from the car. We find no error in defendant's conviction for possession of stolen property.

[3] Finally, defendant asserts the trial court erred when it admitted evidence that thirteen and one-half years prior to trial defendant had been convicted of armed robbery. The State presented evidence that defendant robbed an A&P store in Durham on 25 June 1975. The State's witness, an A&P employee who had been on duty the night of 25 June 1975, testified that at approximately three o'clock a.m. an armed, masked, and gloved man entered the store. The man forced everyone present to lie face down on the floor, and proceeded to commit the robbery. On 6 October 1975 defendant pled guilty to armed robbery. Defendant now contends that because this conviction was more than thirteen years old at the time of his trial, it was too remote in time to be probative of any fact at issue, and hence under Rule 404(b) was unduly prejudicial.

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, · preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1988). The test for admissibility under this Rule has two parts. The first part examines whether the incidents are sufficiently similar; the second part asks whether the incidents are too remote in time. *State v. Davis*, 101 N.C. App. 12, 19, 398 S.E.2d 645, 649 (1990), *disc. rev. denied*, 328 N.C.

574, 403 S.E.2d 516 (1991) (evidence of rape occurring ten years prior is admissible when similar in nature and when defendant spent all but 132 days of that time interval serving a prison sentence).

In the case at bar, the trial court carefully considered this test when ruling on admissibility. Upon review, this Court finds that the first part of the test is clearly met. The evidence presented by the State of the 1975 armed robbery is sufficiently similar to the crimes charged here to be admitted for the purpose of showing a modus operandi, motive and even identity. In both 1975 and 1988, defendant was armed, wore a ski mask and gloves, ordered people present to lie face down on the floor, and took cash.

Furthermore, we hold this evidence not too remote in time. Although the armed robbery of the A&P to which defendant pled guilty was more than thirteen years prior to this trial, defendant spent approximately eight years in prison between these occurrences. See, e.g., Davis, 101 N.C. App. at 20, 398 S.E.2d at 650. Finally, a recent Supreme Court case, State v. Stager, 329 N.C. 278, 406 S.E.2d 876 (1991) is instructive, if not controlling. In that case, our Supreme Court held that evidence of the shooting death of defendant's first husband ten years earlier was admissible even though there was never a conviction. The Court held that the deaths of both of defendant's husbands were sufficiently similar to show intent, and that "remoteness in time is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident; remoteness in time generally affects only the weight to be given such evidence, not its admissibility." Id. at 307, 406 S.E.2d at 893.

Vacated in part and remanded for resentencing as to the conspiracies—Case numbers: 90CRS17196; 97; 98.

No error as to the remaining convictions or the trial.

Judges WYNN and WALKER concur.