ELMORE, Judge, dissenting.
I respectfully disagree with the majority's decision to affirm the trial court's denial of defendant's motions to dismiss four of the five counts of conspiracy to commit robbery with a firearm. The State failed to present substantial evidence of multiple agreements between defendant and his co-conspirators as required to prove more than one conspiracy. Applying the four factors from State v. Rozier , 69 N.C. App. 38, 52, 316 S.E.2d 893, 902 (1984), the State only proved that defendant engaged in one conspiracy. Accordingly, I respectfully dissent.
I. Standard of Review
A trial court's denial of a motion to dismiss is accorded de novo review. State v. Sanders , 208 N.C. App. 142, 144, 701 S.E.2d 380, 382 (2010). A trial court properly denies a defendant's motion to dismiss if "there is substantial evidence (1) of each essential element of the offense charged, ... and (2) of defendant's being the perpetrator of such offense." State v. Powell , 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Whether evidence is substantial "is a question of law for the court and is reviewed de novo . Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." State v. Glisson , --- N.C. App. ----, ----, 796 S.E.2d 124, 127-28 (2017) (internal citations and quotation marks omitted). On a motion to dismiss, a trial court must consider the evidence in a light most favorable to the State. State v. Stone , 323 N.C. 447, 451, 373 S.E.2d 430, 433 (1988). A motion to dismiss is properly denied when the evidence gives rise to a reasonable inference of guilt and is properly allowed when the evidence only raises a suspicion or conjecture as to the defendant's guilt. Id . at 452, 373 S.E.2d at 433.
*375 II. Criminal Conspiracy
"A criminal conspiracy is an agreement between two or more people to do an unlawful act.... [T]o prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice." State v. Morgan, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (internal citation omitted). When the State charges a defendant with two or more conspiracies, "it must prove not only the existence of at least two agreements but also that *611 they were separate ." State v. Griffin , 112 N.C. App. 838, 840, 437 S.E.2d 390, 392 (1993) (emphasis added). "A single conspiracy may, and often does, consist of a series of different offenses." Id . at 841, 437 S.E.2d at 392. However, a series of different offenses "arising from a single agreement [does] not permit prosecutions for multiple conspiracies." Rozier , 69 N.C. App. at 52, 316 S.E.2d at 902 ; see also State v. Howell , 169 N.C. App. 741, 749, 611 S.E.2d 200, 205-06 (2005) (arresting judgment for one of two drug conspiracy convictions when there was only evidence of "one agreement or mutual understanding" and multiple overt acts (emphasis added)). Such prosecutions are inconsistent with the constitutional prohibition against double jeopardy. State v. Medlin , 86 N.C. App. 114, 121, 357 S.E.2d 174, 178 (1987) (citing United States v. Kissel , 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168 (1910) ). "It is the number of separate agreements, rather than the number of substantive offenses agreed upon, which determines the number of conspiracies." State v. Worthington , 84 N.C. App. 150, 163, 352 S.E.2d 695, 703, disc. rev. denied , 319 N.C. 677, 356 S.E.2d 785 (1987) (citations omitted).
Nevertheless, it is difficult to determine whether a single or multiple conspiracies are involved in a particular case. This Court in Rozier established four factors to consider when determining whether a defendant has committed single or multiple conspiracies. 69 N.C. App. at 52, 316 S.E.2d at 902. Those factors are (1) the time intervals between the crimes, (2) the specific participants involved, (3) the conspiracy's objectives, and (4) the number of meetings among the participants. Id . On appeal, defendant argues that applying the Rozier factors to his case reveals a single conspiracy, not five. I agree. To support his argument, defendant cites to four decisions from this Court that applied the Rozier factors and found a single conspiracy.
III. Summary of Rozier Cases
A. State v. Medlin
In State v. Medlin , the State's evidence showed that the defendant participated in ten break-ins of retail stores across Durham from May *376 to August of 1985. 86 N.C. App. at 121, 357 S.E.2d at 178. The robberies were conducted in a similar manner; various electronics were stolen from each location and the defendant and his co-conspirator, Walter Cox, participated in all ten robberies while a third co-conspirator participated in three. Id . at 117-21, 357 S.E.2d at 176-78. Cox testified that he and the defendant would meet after each break-in to plan the next one. Id . at 122, 357 S.E.2d at 179. The defendant was convicted of seven counts of conspiracy to break or enter and appealed the judgment, arguing that the State's evidence showed only "a single scheme or plan to commit an ongoing series of felonious breakings or enterings." Id . at 121, 357 S.E.2d at 178.
The Medlin panel, applying the Rozier factors, "[found] ample evidence of a single conspiracy." Id . at 122, 357 S.E.2d at 179. The panel first determined the break-ins were conducted over a short time period of four months, "some within ten days of each other." Id . Second, these crimes were committed by the same three participants, despite the third co-conspirator not being present for some of the robberies. Id . Third, the participants had the common objective to steal televisions and radios from Durham retail stores. Id . Finally, the panel considered the number of meetings among the participants. Although the defendant met with his co-conspirators generally after each break-in, the purpose of the meetings was to "divide the spoils and discuss the next break-in." Id . The panel summarized the fourth Rozier factor as follows:
The gist of the meetings was to plan subsequent break-ins in furtherance of the original unlawful agreement made sometime before the first break-in. We are hard pressed to find facts more clearly telling of an ongoing series of acts in furtherance of a single conspiracy to break or enter. Rather than show ten separate conspiracies to break or enter on ten separate occasions as the State contends, these facts show one unlawful agreement to break or enter as many times as the participants could get away with.
Id . Accordingly, the Medlin panel vacated the defendant's seven conspiracy convictions and remanded for entry of a judgment on one conspiracy conviction, with instructions *612 to resentence the defendant on this single conspiracy conviction. Id . at 123, 357 S.E.2d at 179. *377 B. State v. Wilson
In State v. Wilson , the State's evidence showed the defendant participated in a series of residential and retail robberies that occurred in Durham over two weeks in December 1988. 106 N.C. App. 342, 344, 416 S.E.2d 603, 604 (1992). The robberies were similar in nature and either two or three perpetrators in ski masks committed each one. Id . The defendant was convicted of, inter alia , four counts of conspiracy to commit armed robbery. Id . at 345, 416 S.E.2d at 604. The defendant appealed the judgment, arguing that three of the conspiracy convictions should be vacated because the evidence only supported one conspiracy. Id .
On appeal, the Wilson panel concluded the facts were "legally indistinguishable" from Medlin . Id . at 346, 416 S.E.2d at 605. Applying the Rozier factors, the panel first determined that the time period for these robberies was a mere two weeks-even shorter than in Medlin . Id . Second, the participants were generally the same in each robbery. Id . "The fact that in two of the robberies the conspirators solicited the assistance of a third man is inconsequential." Id . ; see, e.g. , State v. Overton , 60 N.C. App. 1, 13, 298 S.E.2d 695, 702-03 (1982), disc. rev. denied , 307 N.C. 580, 299 S.E.2d 652 (1983). Third, there was a common objective based on the similar nature of the robberies and one participant's testimony that the purpose was to acquire cash. Id . at 346-47, 416 S.E.2d at 605-06. Finally, the panel determined that, unlike Medlin , there was no evidence of meetings among the participants between each robbery. Id . at 346, 416 S.E.2d at 605. As a result, the panel held there was evidence of one conspiracy " 'to break or enter as many times as the participants could get away with.' " Id . at 347, 416 S.E.2d at 606 (quoting Medlin , 86 N.C. App. at 122, 357 S.E.2d at 179 ). The panel vacated three of the defendant's conspiracy convictions and remanded with instructions to resentence. Id .
C. State v. Griffin
In State v. Griffin , the defendant was indicted on eight counts of conspiracy to provide an inmate with a controlled substance. 112 N.C. App. at 838, 437 S.E.2d at 391. The State's evidence showed that the defendant conspired with civilians and other inmates to smuggle various prescription drugs into the prison so the defendant could make a profit, and drugs were smuggled into the prison as a part of this conspiracy on at least four separate occasions in June 1991. Id . at 839-40, 437 S.E.2d at 391-92. The defendant was convicted of four counts of conspiracy and appealed, arguing there was only a single scheme to bring drugs into the prison. Id . at 840, 437 S.E.2d at 392.
*378 The Griffin panel applied the Rozier factors and held that this amounted to one conspiracy, not four. Id . at 841, 437 S.E.2d at 392. First, the panel determined the one-month span was a short time interval. Id . Second, there were four common participants based on who the State named in its indictments. Id . Third, the common objective of each conspiracy was to deliver controlled substances to an inmate to sell for a profit. Id . "Finally, the State presented no evidence concerning the number of meetings which took place between [the] defendant and the other participants." Id . Thus, the panel vacated three of the defendant's four conspiracy convictions and remanded for resentencing. Id . at 842, 437 S.E.2d at 393.
D. State v. Fink
In State v. Fink , the State's evidence revealed that the defendant and his brothers sold cocaine from their house. 92 N.C. App. 523, 525, 375 S.E.2d 303, 304 (1989). One of the buyers was an undercover SBI agent who purchased cocaine from the defendant over the course of several months. Id . at 525, 375 S.E.2d at 305. The basis of the State's two conspiracy charges of trafficking in cocaine occurred on the evening of 19 February and the morning of 20 February 1987. Id . at 525-26, 375 S.E.2d at 305. The undercover agent conducted a drug buy at the defendant's residence on the 19th and executed a search warrant the next morning, and cocaine was found on both occasions. Id . The defendant *613 was convicted of two counts of conspiracy and one count of trafficking in cocaine. Id . at 527, 375 S.E.2d at 305-06. The defendant appealed, arguing that there was evidence of only one conspiracy. Id . at 532, 375 S.E.2d at 308.
On appeal, the Fink panel held that the two charged conspiracies "were so overlapped as to comprise one continuing conspiracy." Id . at 533, 375 S.E.2d at 309. Applying the Rozier factors, the panel first determined that the two conspiracies occurred within hours of each other. Id . Second, the participants (i.e., the defendant and his brothers) were the same, with the exception of a middle man for the drug buy on 19 February 1987. Id . Third, the common objective was to traffic in cocaine, notwithstanding the varying amounts of cocaine for each conspiracy. Id . Finally, despite no evidence of meetings, the State argued at trial that this was a "continuing conspiracy." Id . The panel vacated one of the conspiracy convictions and remanded for resentencing on the remaining conspiracy conviction. Id . at 534, 375 S.E.2d at 310.
*379 IV. Analysis
I agree with defendant that the four Rozier cases are similar to the present case. Each relevant factor is addressed in turn.
A. Application of Rozier Factors
i. Time Intervals
The first Rozier factor is the time interval between each crime. It is implied that time is a crucial factor because a short time interval between crimes signifies a low possibility that an agreement can be made between each crime.
The panel in each of the four Rozier cases found the respective time intervals to be short. Griffin , 112 N.C. App. at 841, 437 S.E.2d at 392 (one month); Wilson , 106 N.C. App. at 346, 416 S.E.2d at 605 (two weeks); Fink , 92 N.C. App. at 533, 375 S.E.2d at 309 (less than 24 hours) ; Medlin , 86 N.C. App. at 122, 357 S.E.2d at 179 (four months). Although the defendants in the Rozier cases had plenty of time to meet or make an agreement in between the crimes, the State did not present evidence of meetings or agreements that occurred in between the crimes in those cases. Moreover, the panels in those cases did not infer the presence of meetings or agreements based on the time intervals.
Here, the time interval in which the five robberies occurred is two to three hours-much shorter than in any of the four Rozier cases. Notably, the longest time interval cited by any of the Rozier cases is four months, yet the Medlin panel still held that application of the Rozier factors resulted in a single conspiracy. Nevertheless, the majority fails to credit the time interval of two to three hours in this case.
ii. Participants
The second Rozier factor is the specific participants involved in each crime. This factor is significant because when the participants to each crime are completely different, the State must prove separate conspiracies for each crime. However, when the participants are the same, there could potentially be one conspiracy to commit several crimes.
In Medlin and Wilson , the same two individuals participated in each crime, but a third individual participated in some but not all of the crimes. In Fink , the defendant and his brother participated in each alleged crime, despite the SBI's use of a middle man to make the drug purchase. Regardless, the Wilson panel determined that the addition or absence of one participant was "inconsequential."
*380 That scenario is not present in this case. Here, as in Griffin , the participants are the exact same in each of the five robberies.
iii. Objectives
The third Rozier factor is the objective of each alleged conspiracy. 69 N.C. App. at 52, 316 S.E.2d at 902. When the objective of each alleged conspiracy is different, this leans toward separate conspiracies. But when the objective of each alleged conspiracy is same, this leans toward a single conspiracy.
Each panel in the Rozier cases determined that the objective of each alleged conspiracy was the same. The Medlin panel determined that the conspirators had the common goal to "break or enter as many times as [they]
*614 could get away with." The Wilson panel concluded there was a common objective to acquire cash during the several robberies, which was determined based on the nature of the robberies and the testimony of a participant.
Defendant's case is most similar to Medlin . Here, the participants committed a string of robberies early one morning over the course of a few hours before they were caught by the police. Unlike Wilson , there was no testimony from a participant about the objective, but the objective here can be determined based on the nature and similarity of the crimes. Thus, the objective of each alleged conspiracy is to commit an armed robbery, which leans toward a single conspiracy.
iv. Meetings
The final Rozier factor is the number of meetings among the participants. This factor is crucial to determining the number of conspiracies because it tends to reflect the number of agreements among the participants. To prove a single conspiracy, the State must show an express or implied understanding of an agreement. Morgan, 329 N.C. at 658, 406 S.E.2d at 835. To prove two or more conspiracies, the State must prove two or more separate agreements. Griffin , 112 N.C. App. at 840, 437 S.E.2d at 392. When the State proves multiple separate meetings among the participants, a jury could infer multiple implied understandings, and thus multiple conspiracies. See State v. Choppy , 141 N.C. App. 32, 40-41, 539 S.E.2d 44, 50 (2000), disc. rev. denied , 353 N.C. 384, 547 S.E.2d 817 (2001).
In Griffin , Wilson , and Fink , the State presented no evidence of any meetings among the conspirators before, during, or after the crimes that would allow the jury to infer implied understandings of agreements. Although the Medlin panel determined that the participants met between the robberies, the purpose of the meetings was to divide the *381 spoils and plan the next robbery "in furtherance of the original unlawful agreement." One similarity in each Rozier case is that no panel held that an implied understanding could be shown by the participants' actions.
As the majority notes, the State "offered no testimony concerning any discussions between the co-participants before, during, or after each robbery," similar to Griffin , Wilson , and Fink . However, there is evidence that defendant spent the evening prior to the robberies with the other two perpetrators. Although this may be enough for a jury to find an implied understanding of an agreement for a single conspiracy, I respectfully disagree with the majority's conclusion that there is no error in defendant's convictions.
The State failed to present substantial evidence of four meetings or agreements among the participants. The State charged defendant with five conspiracies and, under Griffin , was required to prove five separate meetings or agreements between the participants. Defendant established an implied understanding for one agreement when he testified that he and his fellow perpetrators met the night before the robbery. This single meeting is only enough for the jury to infer a single conspiracy, and the burden was on the State to present evidence of four other separate meetings or agreements. However, the State impliedly admits that it failed to do this by arguing on appeal that "[i]ndeed, there is no evidence present that any meetings ever took place between the defendant and any of his fellow perpetrators." (Emphasis added.) Because the State did not present any evidence-substantial or not-of the agreement element for four of the five conspiracies, the trial court should have granted defendant's motion to dismiss. The State argues there was an implied understanding to commit each robbery based on the action of committing each robbery. However, the panels in the Rozier cases did not find an implied understanding based on the participants' actions, and I believe it would be unwise to depart from that precedent now.
B. "Continuing Conspiracy"
The Fink panel, like Wilson and Griffin, determined there was no evidence of any meetings between any co-conspirator prior to or during the crimes. It held, however, that there was a "continuing conspiracy" to commit a crime. Here, the majority does not believe this is a continuing conspiracy because each crime was "committed and completed before [d]efendant and his co-conspirators *615 moved on and happened upon and mutually agreed to rob and commit other crimes on their next targets ..." (Emphasis added.) I respectfully disagree. The five robberies at issue here were completed in an exceedingly short time interval, the same *382 participants were involved in each robbery, there was a common objective to commit each crime, and the State did not present evidence of five separate agreements between the co-conspirators. Furthermore, the majority concludes that the participants mutually agreed to commit these crimes without evidence of five separate agreements.
C. Multiple Conspiracy Cases
The majority cites to two cases from this Court to support its conclusion that there were multiple conspiracies here. Both, however, are distinguishable from the instant case.
i. State v. Roberts
In State v. Roberts , the State's evidence showed the defendant engaged in two robberies on consecutive nights in December 2002. 176 N.C. App. 159, 160-61, 625 S.E.2d 846, 848 (2006). Both robberies involved three masked perpetrators, and each night, one perpetrator brandished a shotgun while another forced their victim to perform fellatio on him. Id . at 161, 625 S.E.2d at 848. The State's evidence also revealed that, on the night of the first robbery, the defendant met with the other two individuals from that robbery. Id . at 167, 625 S.E.2d at 852. It is unclear if those two individuals were the same or different participants in the second robbery. The defendant was convicted of, inter alia , four counts of conspiracy to commit the offenses of first degree burglary and robbery with a dangerous weapon. Id . at 161-62, 625 S.E.2d at 848-49. The defendant appealed, arguing the State only proved a single conspiracy. Id . at 166, 625 S.E.2d at 851.
On appeal, the Roberts panel mentioned the Rozier factors but did not apply them. Id . at 167, 625 S.E.2d at 852. Instead, the panel determined there was no evidence that the agreement made among the defendant and his co-perpetrators was meant to extend beyond the first robbery. Id . The panel stated that "[t]he mere fact that the defendant was involved in a similar crime the next night does not indicate the two crimes were committed as part of the agreement made on" the night of the first robbery. Id . The Roberts panel ultimately overruled the defendant's assignment of error on the conspiracy convictions. Id .
The majority cites to Roberts to show that our Court has upheld multiple conspiracy convictions, but fails to see that Roberts indicates that defendant here should have been charged with one conspiracy. In Roberts , the defendant was charged with two counts of two different conspiracies, which required the State to prove separate elements for each different conspiracy. It is not clear whether the defendant in *383 Roberts participated in each robbery with the same two perpetrators. Assuming arguendo that the defendant was the only common perpetrator in each robbery, then the defendant would have had to make two separate agreements.
Here, the perpetrators in the five robberies were all the same, and defendant was charged with five counts of conspiracy to commit robbery with a firearm. This means the State had to prove each element of this conspiracy five separate times, but the evidence only established the "agreement" element once. Thus, Roberts is distinguishable from the case at bar, and I would not apply it.
ii. State v. Glisson
In State v. Glisson , the defendant sold oxycodone to an undercover officer on three separate occasions. --- N.C. App. at ----, 796 S.E.2d at 126. The first drug buy in August 2012 was initiated by an informant with an undercover officer present, while the second and third drug buys in September and December 2012 were initiated by the undercover officer. Id . The defendant also brought the same third party to each drug buy. Id . The trial court convicted the defendant of conspiracy to sell opium, conspiracy to deliver opium, and conspiracy to possess with the intent to sell or deliver opium. The defendant appealed, arguing that she engaged in one continuing conspiracy. Id . at ----, 796 S.E.2d at 127-28.
*616 On appeal, the Glisson panel applied the Rozier factors and found multiple conspiracies. Id. at ----, 796 S.E.2d at 128-29. First, the panel found that one month passed between the first and second drug buys and two months passed between the second and third. Id . at ----, 796 S.E.2d at 129. Second, even though the informant was only present for the first drug buy, the participants were the same: the defendant, her third party, and the undercover officer. Id . Third, even though the objectives may have been similar, the amount of drugs varied. Id . Finally, and most significantly, there was no meeting among the participants to engage in each drug buy, and the defendant did not plan the next drug buy since each was initiated by either the informant or the undercover officer. Id . This shows the defendant could not have anticipated future drug buys and therefore had to separately agree to each transaction. Id . Thus, the Glisson panel concluded there were multiple conspiracies. Id.
Again, the majority cites to Glisson to support its contention that our Court has previously found multiple conspiracies, but it fails to acknowledge the factual differences between the two cases. First, as in Roberts , the defendant in Glisson was charged with three conspiracies related to three different incident offenses, which required the State *384 to prove separate elements for each conspiracy. Here, defendant was charged with five counts of conspiracy for the same incident offense. Second, even though the Glisson panel applied the Rozier factors, the "meeting" factor is significantly different. In Glisson , it was determined there were no meetings between the participants, except for the drug buys themselves, because the defendant did not initiate the transactions and thus could not have anticipated the future drug buys. Here, defendant spent the night prior to the robberies with his fellow perpetrators, and a jury could infer that the purpose of this meeting was to plan and agree to commit as many robberies as possible. Additionally, the State presented no evidence of any other meetings prior to or during the robberies. Coupled with the other Rozier factors, this indicates a single conspiracy. This case is therefore distinguishable from Glisson .
V. Conclusion
The majority declines to apply Rozier and its progeny to this case, effectively overlooking years of precedent from this Court. I, however, would apply the Rozier factors to defendant's case. First, the time interval was a few hours-much shorter than in Medlin , Wilson , Griffin , or Fink . Second, the participants in the five robberies appear to be the same: defendant and the two men he met earlier that night. Third, the objective of each crime is the same: to commit robbery with a dangerous weapon. Finally, the State presented no evidence of any meetings between defendant and the co-conspirators prior to or during the robberies. Although the jury could find an implied understanding to commit a robbery based on defendant's testimony that he spent the evening prior to the robberies with the other two perpetrators, this only supports one conspiracy conviction; the State failed to present evidence of four other separate meetings or agreements. Similar to Medlin , the facts here show one agreement to commit as many robberies as possible.
Applying Rozier , I believe defendant committed only one conspiracy. I would therefore hold that the trial court erred by failing to dismiss the four other counts of conspiracy to commit robbery with a firearm, and I would vacate four of defendant's five conspiracy convictions and remand for resentencing on the remaining one. See, e.g. , Rozier , 69 N.C. App. at 54, 316 S.E.2d at 903 (holding that the earliest conspiracy conviction should stand when more than one conspiracy is charged but only one is proven). I respectfully dissent from the majority's decision to uphold four of defendant's conspiracy convictions.