IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-226

 Filed: 7 November 2017

Guilford County, No. 14 CRS 71535-36, 71540-42, 71544, 71555-57, 71559-64

STATE OF NORTH CAROLINA

 v.

ANTONIO LAMAR STIMPSON

 Appeal by defendant from judgments entered 28 April 2016 by Judge Susan E.

Bray in Guilford County Superior Court. Heard in the Court of Appeals 23 August

2017.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General David
 P. Brenskelle, for the State.

 The Epstein Law Firm PLLC, by Drew Nelson, for defendant-appellant.

 TYSON, Judge.

 Antonio Lamar Stimpson (“Defendant”) appeals from judgments entered after

a jury convicted him of discharging a firearm into an occupied property, discharging

a firearm into an occupied vehicle, five counts of conspiracy to commit robbery with

a firearm, six counts of robbery with a firearm, and two counts of attempted robbery

with a firearm. Defendant has abandoned his appeal on all convictions and

judgments, except for four of the five conspiracy convictions. We find no error in any

of Defendant’s convictions and judgments.
 I. Factual Background

 A. The Crimes

 1. Smith

 In the early morning hours of 22 March 2014, Debra Smith left a hair salon on

Summit Avenue in Greensboro and entered her vehicle. A dark colored Jeep

Cherokee vehicle swiftly pulled up and blocked her from leaving. Ms. Smith testified

she saw two men exit the Jeep, with one man carrying a pump shotgun. The men

wore masks and dark clothing. Ms. Smith was ordered to exit her vehicle and

instructed to “give us your money.”

 Ms. Smith testified she was “scared for her life” when a gunshot was fired near

her head. She fell onto the pavement as she exited from her vehicle. Ms. Smith told

the men she did not have any money. One of the men with a shotgun began to taunt

her. The other man stated, “Come on, man, take the vehicle” and the men got into

Ms. Smith’s car and drove it away.

 2. Eban and Nie

 On the same morning at about 5:45 a.m., Kler Eban was watching from the

front door of his home on Sunrise Valley Road in Greensboro, as his wife walked to

her car to leave for work. He saw three men walk past his house. Mr. Eban testified

the men returned and two went behind his wife’s car and one came toward the door

of his house and shouted at him to open the door. Mr. Eban testified the men’s faces

were covered. One of the men pointed a gun wrapped in cloth at Mr. Eban.

 -2-
 Mr. Eban heard a gunshot and attempted to get out of the door to assist his

wife. Mr. Eban’s wife, Lieu Nie, testified a red Jeep was parked behind her car. The

men had shot at her through the driver’s side window while she was sitting in the

driver’s seat.

 Two shots were also fired in Mr. Eban’s direction. Ms. Nie crawled over the

front seat and escaped through the rear door. The robbers entered Ms. Nie’s car and

stole a shopping bag of new cooking utensils. Mr. Eban testified one of the men got

into the Jeep and two of them got into his wife’s car and drove it away.

 3. Nareau

 Around 6:30 a.m., John Nareau drove his car into a parking space at his

workplace on Norwalk Street in Greensboro. As he exited his vehicle, a male got in

front of him and raised what appeared to be a sawed-off shot gun. Mr. Nareau was

told “don’t try anything. There’s two in the back.” Mr. Nareau testified the man wore

a mask and demanded his wallet and cellphone. After handing over his wallet and

phone, Mr. Nareau ran away and watched the men get into a dark colored Jeep and

drive away.

 4. Tomlin, White, Wilkerson, and Mork

 At a little before 7:00 a.m. on the same date, four friends, Elizabeth Tomlin,

Brinson White, Clair Wilkerson and Wesley Mork, were loading luggage in the trunk

of their rental car, when three men yelled at them “to turn around, mother f—ker;”

and “get down mother f—ker.” Ms. Tomlin saw the men exit from a red Jeep parked

30-40 feet away. The men wore masks and dark clothing and carried guns. One of

 -3-
the guns appeared to be a sawed-off shotgun. The two women were chased by one

man, while Mr. Carter and Mr. Mork were detained on the ground by the other two

men from the Jeep. Mr. Mork’s wallet and cash were stolen and cash was stolen from

Mr. Carter.

 During the pursuit, Ms. Tomlin’s and Ms. Wilkerson’s bags were taken. One

of the attackers yelled “get in the car and take the car.” The keys to the rental car

were not in the vehicle, so all three men ran back to the Jeep and left.

 5. Holland

 Nicholas Holland was the final victim of the related crimes that occurred that

morning. As Mr. Holland left his residence on Tremont Street in Greensboro, he

noticed two males walk past the house. Mr. Holland observed a Jeep vehicle quickly

pull up in front of his house. A masked male with a handgun demanded, “Give me

what you have.” Mr. Holland offered his brief case and car keys and attempted to

run away. One of the men chased him until the same Jeep pulled up and the man

climbed inside. The Jeep sped away.

 B. Investigations

 In response to the robberies, Greensboro Police Detective Devin Allis received

a dispatch with a description of the dark colored Jeep Cherokee being involved.

Detective Allis pursued the Jeep and apprehended the driver, Aaron Spivey, after a

chase. Mr. Spivey was arrested with Mr. Mork’s wallet in his possession.

 After Spivey’s arrest, officers located Defendant and LeMarcus McKinnon

walking in a nearby area. Defendant and McKinnon ran as the officers approached

 -4-
and had identified themselves. Defendant was apprehended by Lieutenant Larry

Patterson. When arrested, Defendant was wearing a dark colored T-shirt, dark blue

jeans and grey sneakers. He had cash, Mr. Nareau’s cellphone and the keys to Ms.

Nie’s car in his possession.

 When interviewed by police, Defendant initially denied any involvement in the

robberies. Eventually Defendant admitted he had been present in the dark Jeep

Cherokee with Spivey and McKinnon. Defendant stated he and McKinnon were

cousins and were “tight.” Defendant acknowledged he had met Spivey the previous

week. Defendant also told police he had handled one of the guns a few days before

the robberies.

 Defendant told police officers he had been a passenger in the Jeep and

witnessed the robberies perpetrated by the others. Defendant admitted driving the

Jeep from the scene of the robbery of Ms. Nie and to later meeting Spivey and

McKinnon for the subsequent robberies.

 Officers recovered three pair of gloves, a blue toboggan, a black and grey

bandana and a black headband or neckwarmer from inside the passenger area of the

Jeep Cherokee. The handbags and briefcase belonging to the various victims were

also recovered from inside the Jeep.

 II. Jurisdiction

 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2015)

and N.C. Gen. Stat. § 15A-1444(a) (2015).

 III. Issue

 -5-
 Defendant asserts the trial court erred by failing to dismiss four of the

conspiracy charges and argues the State’s evidence supported only a single charge.

 IV. Standard of Review

 “We review the trial court’s denial of a motion to dismiss de novo.” State v.

Sanders, 208 N.C. App. 142, 144, 701 S.E.2d 380, 382 (2010). Under a de novo

standard of review, this Court “considers the matter anew and freely substitutes its

own judgment for that of the trial court.” Id.

 In ruling on a motion to dismiss for insufficiency of the evidence,

 the trial court must consider the evidence in the light most
 favorable to the State, drawing all reasonable inferences in
 the State’s favor. All evidence, competent or incompetent,
 must be considered. Any contradictions or conflicts in the
 evidence are resolved in favor of the State, and evidence
 unfavorable to the State is not considered. . . . [S]o long as
 the evidence supports a reasonable inference of the
 defendant’s guilt, a motion to dismiss is properly denied
 even though the evidence also permits a reasonable
 inference of the defendant’s innocence. The test for
 sufficiency of the evidence is the same whether the
 evidence is direct, circumstantial or both.

State v. Bradshaw, 366 N.C. 90, 92-93, 728 S.E.2d 345, 347 (2012) (emphasis

supplied) (internal citations and quotation marks omitted).

 V. Analysis

 A. State’s evidence

 “A criminal conspiracy is an agreement between two or more persons to do an

unlawful act . . . .” State v. Massey, 76 N.C. App. 660, 661, 334 S.E.2d 71, 72 (1985).

The agreement to commit the unlawful act may be established by circumstantial

 -6-
evidence. State v. Brewton, 173 N.C. App. 323, 327-28, 618 S.E.2d 850, 854-55 (2005).

 A conspiracy ordinarily “ends with the attainment of its criminal objectives

. . . .” State v. Tirado, 358 N.C. 551, 577, 599 S.E.2d 515, 533 (2004), cert. denied sub

nom, Queen v. N.C., 544 U.S. 909, 161 L. Ed. 2d 286 (2005) (citation omitted). “The

question of whether multiple agreements constitute a single conspiracy or multiple

conspiracies is a question of fact for the jury.” Id. (citation omitted).

 The State alleged Defendant, Mr. Spivey and Mr. McKinnon conspired to

commit the robberies of Ms. Smith, Ms. Lie, Mr. Nareau, Ms. Tomlin, Ms. Wilkerson,

Mr. Mork and Mr. Holland. The State proceeded on five indictments alleging each

incident as a separate conspiracy. The State did not offer the testimony of Spivey or

McKinnon, Defendant’s alleged co-conspirators. The only witnesses called by the

State were the victims of the robberies and the police officers involved in the

investigation of the crimes.

 We all agree the evidence supports the conclusion that Defendant, Spivey and

McKinnon conspired to commit the robberies. The State’s evidence showed

Defendant and his compatriots were all wearing dark clothing. Implements

indicating planning in advance and to assist committing robberies were recovered

from inside the Jeep: head and face coverings, gloves, and weapons.

 Defendant testified concerning his relationship with McKinnon, his cousin,

and that he had met Spivey the week prior to the crimes, and had handled a shotgun

used in the robberies a few days before the robberies and admitted being present

inside the Jeep Cherokee when the crimes occurred. All three men had been together

 -7-
on the afternoon of 21 March 2014. Defendant testified he, Spivey and McKinnon

had been drinking and taking drugs together during the evening before and into the

morning of the robberies and that all three men had headed out and traveled together

in the early morning hours in the Jeep.

 B. Single Conspiracy Cases

 Defendant argues all of the above facts present only evidence of a single

conspiracy to commit robberies on the morning of 22 March 2014. Defendant asserts

State v. Medlin, 86 N.C. App. 114, 357 S.E.2d 174 (1987) and the cases which follow

it, control the outcome of his case. See State v. Fink, 92 N.C. App. 523, 375 S.E.2d 303

(1989); State v. Wilson, 106 N.C. App. 342, 416 S.E.2d 603 (1992) and State v. Griffin,

112 N.C. App. 838, 437 S.E.2d 390 (1993). We address each in turn.

 1. State v. Medlin

 In Medlin, the defendant and two others were charged with break-ins and

thefts of seven retail stores over the period of four months. Medlin, 86 N.C. App. at

115, 357 S.E.2d at 175. Defendant-Medlin operated a thrift store where co-

conspirators Cox and Williams would “hang out.” Id. at 118, 357 S.E.2d at 177. Cox

and Williams testified the break-ins were Medlin’s idea. The State’s evidence showed

all the break-ins occurred in essentially the same manner: Cox and Williams would

break a store window, climb through the hole and carry away items. The defendant

would drive his truck to the stores to assist the others in carrying away the stolen

goods. The participants met after the break-ins to divide the stolen items and to

discuss the next break-in. Id. at 122, 357 S.E.2d at 179. For each of the break-ins,

 -8-
the defendant was charged and convicted under separate indictments for conspiring

with Cox and Williams to commit the ten felonious break-ins. Id. at 121, 357 S.E.2d

at 178.

 This Court recognized “[w]hen the evidence shows a series of agreements or

acts constituting a single conspiracy, a defendant cannot be prosecuted on multiple

conspiracy indictments consistent with the constitutional prohibition against double

jeopardy.” Id. (emphasis in original) (citing United States v. Kissel, 218 U.S. 601, 54

L. Ed. 1168 (1910)). While the offense “is complete upon the formation of the unlawful

agreement, the offense continues until the conspiracy comes to fruition . . . .” Id. at

122, 357 S.E.2d at 179.

 While there is no simple test for determining whether there was one conspiracy

or multiple conspiracies, the Court acknowledged several factors impact the

determination of the number of conspiracies, including: “time intervals, participants,

objectives, and number of meetings.” Id.; see also Tirado, 358 N.C. at 577, 599 S.E.2d

at 533 (“The nature of the agreement or agreements, the objectives of the

conspiracies, the time interval between them, the number of participants, and the

number of meetings are all factors that may be considered.”).

 2. State v. Fink

 In Fink, the conspiracies charged had occurred within hours of each other.

Fink, 92 N.C. App. at 533, 375 S.E.2d at 309. The participants in the first conspiracy

alleged were the defendant-Fink, his brothers, and one of their “select” customers;

the participants in the second conspiracy alleged were Fink and his brothers. Id. A

 -9-
panel of this Court found that while “the amount of cocaine varied in the first and

second alleged conspiracies, the objective was the same: to traffic in cocaine.” Id.

Furthermore at trial, the State argued “there was a ‘continuing conspiracy’ among

the defendants.” Id. This Court recognized a single conspiracy is not necessarily

“transformed into multiple conspiracies simply because . . . the same acts in

furtherance of it occur over a period of time.” Id. at 532, 375 S.E.2d at 309. The Court

in Fink held evidence showed there was only one “mutual, implied understanding

among the brothers to commit the unlawful act of trafficking in cocaine.” Id. at 530,

375 S.E.2d at 308.

 3. State v. Wilson

 In State v. Wilson, 106 N.C. App. 342, 344, 416 S.E.2d 603, 604 (1992), “a series

of robberies occurred in and around Durham during a two week period in December

1988.” One of the participants in the robberies in Wilson was a witness for the State.

He testified that a few days before their first robbery, “defendant told him that cash

money . . . was what it was all about and the onliest [sic] way to get cash money was

in armed robberies.” Id. at 346, 416 S.E.2d at 605. The co-conspirator also testified

that once they started committing the robberies, the men did not want to stop

“robbing places.” Id.

 This Court found the facts of Wilson “to be legally indistinguishable from

Medlin” and stated, “evidence that a common scheme of a single conspiracy to commit

armed robberies to acquire cash existed.” Id. at 346, 416 S.E.2d at 605.

 4. State v. Griffin

 - 10 -
 This Court also reached a similar conclusion in State v. Griffin, 112 N.C. App.

838, 437 S.E.2d 390 (1993). In Griffin, the State failed to prove more than one

conspiracy, where the offenses occurred over a one month period, the indictments

alleged the defendant had conspired with the same participants for each conspiracy

count and with the same objective. Id. at 841, 437 S.E.2d at 392.

 Furthermore, “the State presented no evidence concerning the number of

meetings which took place between [the] defendant and the other participants.” Id.

“[W]hen the State elects to charge separate conspiracies, it must prove not only the

existence of at least two agreements, but also that they were separate.” Id. at 840,

437 S.E.2d at 392; see also State v. Rozier, 69 N.C. App. 38, 52, 316 S.E.2d 893, 902

(vacating defendant’s additional conspiracy counts where multiple overt acts arising

from a single agreement to sell large amounts of cocaine do not permit prosecutions

for multiple conspiracies), cert. denied, 312 N.C. 88, 321 S.E.2d 907 (1984).

 Here, Defendant argues none of the other perpetrators testified at trial and the

State offered no direct evidence of any planning or conversations before or between

each event. The State offered no testimony concerning any discussions between the

co-participants before, during or after each robbery. Defendant argues the State’s

evidence was sufficient to allow the jury to infer only a single conspiracy had occurred

based upon the implements found in the Jeep, the victims’ belongings found on all of

the culprits, and Defendant’s own statements that he had met up with the co-

conspirators before their crime spree began. We disagree.

 C. Multiple Conspiracies

 - 11 -
 The State asserts the facts before us are distinguishable from the line of cases

above. Unlike the facts in State v. Medlin, no evidence shows any meeting took place

between Defendant and the other two robbers subsequent to any of the robberies to

plan additional robberies in furtherance of any prior agreement to engage in as many

crimes as possible, only that the three men were drinking and doing drugs together

the evening and morning before the crimes were committed. There was no evidence

that the Defendant and his co-conspirators conspired to engage in as many robberies

as they could. They agreed and engaged in random robberies as the opportunities

appeared before them.

 The dissenting judge asserts the State “impliedly” admits it did not prove five

separate agreements. We disagree. On brief, the State acknowledges there was no

proof of any meeting about or discussion between Defendant and the other

perpetrators to plan to commit a series of robberies. Evidence was offered by the State

and by Defendant of meetings and interactions with Defendant and the other

conspirators, before and between each robbery, but no evidence of the conversations.

 The facts in Wilson are also dissimilar to the instant case. No evidence shows

any meeting being held between Defendant and the other robbers prior to the

robberies to discuss or plan the robberies, or the specific property to be stolen during

the course of the robberies. Unlike the facts in Fink and Griffin, there is no evidence

of a meeting between Defendant and the other two perpetrators to devise a single

plan to engage in a series of robberies.

 - 12 -
 The dissent finds Defendant’s case to be most similar to Medlin. However the

State’s evidence showed defendant-Medlin initiated the idea and suggested to his co-

conspirators the plan to break in and steal the televisions and radios that he could

sell in his thrift store. Medlin, 86 N.C. App. at 119, 357 S.E.2d at 177. The multiple

break-ins were part of a single plan to steal merchandise to be sold at Medlin’s thrift

store. Id. at 122, 357 S.E.2d at 179. Here, the crimes were ones of opportunity, where

differing victims were accosted and items were stolen from them as Defendant and

his co-conspirators happened to come upon them.

 No evidence limits Defendant as engaged in a one-time, pre-planned and

organized, ongoing and continuing conspiracy to engage in robbery and the other

crimes. In particular, the random nature and happenstance of the robberies and

related crimes here do not indicate a one-time, pre-planned conspiracy. The victims

and property stolen were not connected. The victims and crimes committed arose at

random and by pure opportunity. Each of the series of crimes on the various victims

was committed and completed before Defendant and his co-conspirators moved on

and happened upon and mutually agreed to rob and commit other crimes on their

next targets and victims of opportunity. Defendant’s argument is overruled.

 1. State v. Roberts

 In State v. Roberts, 176 N.C. App. 159, 625 S.E.2d 846 (2006), the defendant

was convicted of two counts of conspiring to commit first degree burglary and robbery

with a dangerous weapon for burglaries and robberies which occurred on two

consecutive nights. On the first night, the defendant and others discussed “robbing

 - 13 -
someone.” Id. at 161, 625 S.E.2d at 848. The conspirators then burglarized and

robbed two separate victims. Id. On the second night, the defendant took an active

part in another burglary and robbery of different victims, but there was no testimony

that the agreement of the first night covered the acts of the second. Id.

 This Court determined the State had shown separate conspiracies where the

defendant and two men agreed to rob someone and nothing else showed subsequent

similar criminal acts were committed as part of their initial agreement. Id. at 167,

625 S.E.2d 852. Viewed in the light most favorable to the State, sufficient evidence

was presented to allow the jury to find the defendant was involved in two separate

conspiracies. Id.

 2. State v. Glisson

 A recent case before this Court addressed the defendant’s argument that he

had engaged in a single conspiracy to complete three separate transactions. State v.

Glisson, __ N.C. App. __, 796 S.E.2d 124 (2017). In Glisson, the defendant sold

oxycodone to an undercover police officer in three separate controlled drug

transactions with each transaction being a month or more apart. Id. at. __, 796 S.E.2d

at 126. No evidence was offered to suggest that the defendant planned the

transactions as a series. An informant or the police initiated each sale. Id at. __, 796

S.E.2d at 129.

 This Court held “evidence was sufficient to support a reasonable inference that

the defendant planned each transaction in response to separate, individual requests

by the buyers . . . .” Id. “While the objectives of each [crime] may have been similar,

 - 14 -
the agreed upon amount differed and none of the transactions contemplated future

transactions.” Id.

 Considering the totality of the circumstances in the present case, and

reviewing the evidence in the light most favorable to the State, sufficient evidence

supports a reasonable inference for the jury to consider and conclude that Defendant

was involved in five separate conspiracies to commit armed robbery.

 While the dissenting opinion sets forth our same standard of review on motions

to dismiss, it appears to ignore its application to the motion to dismiss in the case

before us. “In ‘borderline’ or close cases, our courts have consistently expressed a

preference for submitting issues to the jury, both in reliance on the common sense

and fairness of the twelve and to avoid unnecessary appeals.” State v. Hamilton, 77

N.C. App. 506, 512, 335 S.E.2d 506, 510 (1985) (citations omitted) review denied, 315

N.C. 593, 341 S.E.2d 33 (1986). “The question of whether multiple agreements

constitute a single conspiracy or multiple conspiracies is a question of fact for the

jury.” Tirado, N.C. App. at 577, 599 S.E.2d at 533 (citation omitted). The trial court

did not err by denying Defendant’s motion to dismiss and properly submitted all five

conspiracy counts to the jury.

 VI. Conclusion

 In a motion to dismiss, the trial court must consider the evidence of multiple

conspiracies in the light most favorable to the State and give the State every

reasonable inference to be draw from the evidence presented. Bradshaw, 366 N.C. at

 - 15 -
92-93, 728 S.E.2d at 347. We find no error in Defendant’s convictions or the

judgments entered thereon. It is so ordered.

 NO ERROR.

 Judge STROUD concurs.

 Judge ELMORE dissents with separate opinion.

 - 16 -
 No. COA17-226 – State v. Stimpson

 ELMORE, Judge, dissenting.

 I respectfully disagree with the majority’s decision to affirm the trial court’s

denial of defendant’s motions to dismiss four of the five counts of conspiracy to commit

robbery with a firearm. The State failed to present substantial evidence of multiple

agreements between defendant and his co-conspirators as required to prove more

than one conspiracy. Applying the four factors from State v. Rozier, 69 N.C. App. 38,

52, 316 S.E.2d 893, 902 (1984), the State only proved that defendant engaged in one

conspiracy. Accordingly, I respectfully dissent.

 I. Standard of Review

 A trial court’s denial of a motion to dismiss is accorded de novo review.

State v. Sanders, 208 N.C. App. 142, 144, 701 S.E.2d 380, 382 (2010). A trial court

properly denies a defendant’s motion to dismiss if “there is substantial evidence (1)

of each essential element of the offense charged, . . . and (2) of defendant’s being the

perpetrator of such offense.” State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117

(1980). Whether evidence is substantial “is a question of law for the court and is

reviewed de novo. Substantial evidence is relevant evidence that a reasonable mind

might accept as adequate to support a conclusion.” State v. Glisson, ___ N.C. App.

___, ___, 796 S.E.2d 124, 12728 (2017) (internal citations and quotation marks

omitted). On a motion to dismiss, a trial court must consider the evidence in a light

most favorable to the State. State v. Stone, 323 N.C. 447, 451, 373 S.E.2d 430, 433
 STATE V. STIMPSON

 Elmore, J., dissenting.

(1988). A motion to dismiss is properly denied when the evidence gives rise to a

reasonable inference of guilt and is properly allowed when the evidence only raises a

suspicion or conjecture as to the defendant’s guilt. Id. at 452, 373 S.E.2d at 433.

 II. Criminal Conspiracy

 “A criminal conspiracy is an agreement between two or more people to

do an unlawful act . . . . [T]o prove conspiracy, the State need not prove an express

agreement; evidence tending to show a mutual, implied understanding will suffice.”

State v. Morgan, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (internal citation

omitted). When the State charges a defendant with two or more conspiracies, “it must

prove not only the existence of at least two agreements but also that they were

separate.” State v. Griffin, 112 N.C. App. 838, 840, 437 S.E.2d 390, 392 (1993)

(emphasis added). “A single conspiracy may, and often does, consist of a series of

different offenses.” Id. at 841, 437 S.E.2d at 392. However, a series of different

offenses “arising from a single agreement [does] not permit prosecutions for multiple

conspiracies.” Rozier, 69 N.C. App. at 52, 316 S.E.2d at 902; see also State v. Howell,

169 N.C. App. 741, 749, 611 S.E.2d 200, 20506 (2005) (arresting judgment for one of

two drug conspiracy convictions when there was only evidence of “one agreement or

mutual understanding” and multiple overt acts (emphasis added)). Such

prosecutions are inconsistent with the constitutional prohibition against double
 2
 STATE V. STIMPSON

 Elmore, J., dissenting.

jeopardy. State v. Medlin, 86 N.C. App. 114, 121, 357 S.E.2d 174, 178 (1987) (citing

United States v. Kissel, 218 U.S. 601, 31 S. Ct. 124, 54 L. Ed. 1168 (1910)). “It is the

number of separate agreements, rather than the number of substantive offenses

agreed upon, which determines the number of conspiracies.” State v. Worthington,

84 N.C. App. 150, 163, 352 S.E.2d 695, 703, disc. rev. denied, 319 N.C. 677, 356 S.E.2d

785 (1987) (citations omitted).

 Nevertheless, it is difficult to determine whether a single or multiple

conspiracies are involved in a particular case. This Court in Rozier established four

factors to consider when determining whether a defendant has committed single or

multiple conspiracies. 69 N.C. App. at 52, 316 S.E.2d at 902. Those factors are (1)

the time intervals between the crimes, (2) the specific participants involved, (3) the

conspiracy’s objectives, and (4) the number of meetings among the participants. Id.

On appeal, defendant argues that applying the Rozier factors to his case reveals a

single conspiracy, not five. I agree. To support his argument, defendant cites to four

decisions from this Court that applied the Rozier factors and found a single

conspiracy.

 III. Summary of Rozier Cases

 A. State v. Medlin

 3
 STATE V. STIMPSON

 Elmore, J., dissenting.

 In State v. Medlin, the State’s evidence showed that the defendant participated

in ten break-ins of retail stores across Durham from May to August of 1985. 86 N.C.

App. at 121, 357 S.E.2d at 178. The robberies were conducted in a similar manner;

various electronics were stolen from each location and the defendant and his co-

conspirator, Walter Cox, participated in all ten robberies while a third co-conspirator

participated in three. Id. at 117–21, 357 S.E.2d at 17678. Cox testified that he and

the defendant would meet after each break-in to plan the next one. Id. at 122, 357

S.E.2d at 179. The defendant was convicted of seven counts of conspiracy to break or

enter and appealed the judgment, arguing that the State’s evidence showed only “a

single scheme or plan to commit an ongoing series of felonious breakings or

enterings.” Id. at 121, 357 S.E.2d at 178.

 The Medlin panel, applying the Rozier factors, “[found] ample evidence of a

single conspiracy.” Id. at 122, 357 S.E.2d at 179. The panel first determined the

break-ins were conducted over a short time period of four months, “some within ten

days of each other.” Id. Second, these crimes were committed by the same three

participants, despite the third co-conspirator not being present for some of the

robberies. Id. Third, the participants had the common objective to steal televisions

and radios from Durham retail stores. Id. Finally, the panel considered the number

of meetings among the participants. Although the defendant met with his co-
 4
 STATE V. STIMPSON

 Elmore, J., dissenting.

conspirators generally after each break-in, the purpose of the meetings was to “divide

the spoils and discuss the next break-in.” Id. The panel summarized the fourth

Rozier factor as follows:

 The gist of the meetings was to plan subsequent

 break-ins in furtherance of the original unlawful

 agreement made sometime before the first break-in. We

 are hard pressed to find facts more clearly telling of an

 ongoing series of acts in furtherance of a single conspiracy

 to break or enter. Rather than show ten separate

 conspiracies to break or enter on ten separate occasions as

 the State contends, these facts show one unlawful

 agreement to break or enter as many times as the

 participants could get away with.

 Id. Accordingly, the Medlin panel vacated the defendant’s seven conspiracy

convictions and remanded for entry of a judgment on one conspiracy conviction, with

instructions to resentence the defendant on this single conspiracy conviction. Id. at

123, 357 S.E.2d at 179.

 B. State v. Wilson

 5
 STATE V. STIMPSON

 Elmore, J., dissenting.

 In State v. Wilson, the State’s evidence showed the defendant participated in a

series of residential and retail robberies that occurred in Durham over two weeks in

December 1988. 106 N.C. App. 342, 344, 416 S.E.2d 603, 604 (1992). The robberies

were similar in nature and either two or three perpetrators in ski masks committed

each one. Id. The defendant was convicted of, inter alia, four counts of conspiracy to

commit armed robbery. Id. at 345, 416 S.E.2d at 604. The defendant appealed the

judgment, arguing that three of the conspiracy convictions should be vacated because

the evidence only supported one conspiracy. Id.

 On appeal, the Wilson panel concluded the facts were “legally

indistinguishable” from Medlin. Id. at 346, 416 S.E.2d at 605. Applying the Rozier

factors, the panel first determined that the time period for these robberies was a mere

two weeks — even shorter than in Medlin. Id. Second, the participants were

generally the same in each robbery. Id. “The fact that in two of the robberies the

conspirators solicited the assistance of a third man is inconsequential.” Id.; see, e.g.,

State v. Overton, 60 N.C. App. 1, 13, 298 S.E.2d 695, 70203 (1982), disc. rev.

denied, 307 N.C. 580, 299 S.E.2d 652 (1983). Third, there was a common objective

based on the similar nature of the robberies and one participant’s testimony that the

purpose was to acquire cash. Id. at 346–47, 416 S.E.2d at 605–06. Finally, the panel

determined that, unlike Medlin, there was no evidence of meetings among the
 6
 STATE V. STIMPSON

 Elmore, J., dissenting.

participants between each robbery. Id. at 346, 416 S.E.2d at 605. As a result, the

panel held there was evidence of one conspiracy “ ‘to break or enter as many times as

the participants could get away with.’ ” Id. at 347, 416 S.E.2d at 606 (quoting Medlin,

86 N.C. at 122, 357 S.E.2d at 179). The panel vacated three of the defendant’s

conspiracy convictions and remanded with instructions to resentence. Id.

 C. State v. Griffin

 In State v. Griffin, the defendant was indicted on eight counts of conspiracy to

provide an inmate with a controlled substance. 112 N.C. App. at 838, 437 S.E.2d at

391. The State’s evidence showed that the defendant conspired with civilians and

other inmates to smuggle various prescription drugs into the prison so the defendant

could make a profit, and drugs were smuggled into the prison as a part of this

conspiracy on at least four separate occasions in June 1991. Id. at 839–40, 437 S.E.2d

at 39192. The defendant was convicted of four counts of conspiracy and appealed,

arguing there was only a single scheme to bring drugs into the prison. Id. at 840, 437

S.E.2d at 392.

 The Griffin panel applied the Rozier factors and held that this amounted to

one conspiracy, not four. Id. at 841, 437 S.E.2d at 392. First, the panel determined

the one-month span was a short time interval. Id. Second, there were four common

participants based on who the State named in its indictments. Id. Third, the common
 7
 STATE V. STIMPSON

 Elmore, J., dissenting.

objective of each conspiracy was to deliver controlled substances to an inmate to sell

for a profit. Id. “Finally, the State presented no evidence concerning the number of

meetings which took place between [the] defendant and the other participants.” Id.

Thus, the panel vacated three of the defendant’s four conspiracy convictions and

remanded for resentencing. Id. at 842, 437 S.E.2d at 393.

 D. State v. Fink

 In State v. Fink, the State’s evidence revealed that the defendant and his

brothers sold cocaine from their house. 92 N.C. App. 523, 525, 375 S.E.2d 303, 304

(1989). One of the buyers was an undercover SBI agent who purchased cocaine from

the defendant over the course of several months. Id. at 525, 375 S.E.2d at 305. The

basis of the State’s two conspiracy charges of trafficking in cocaine occurred on the

evening of 19 February and the morning of 20 February 1987. Id. at 525–26, 375

S.E.2d at 305. The undercover agent conducted a drug buy at the defendant’s

residence on the 19th and executed a search warrant the next morning, and cocaine

was found on both occasions. Id. The defendant was convicted of two counts of

conspiracy and one count of trafficking in cocaine. Id. at 527, 375 S.E.2d at 305–06.

The defendant appealed, arguing that there was evidence of only one conspiracy. Id.

at 532, 375 S.E.2d at 308.

 8
 STATE V. STIMPSON

 Elmore, J., dissenting.

 On appeal, the Fink panel held that the two charged conspiracies “were so

overlapped as to comprise one continuing conspiracy.” Id. at 533, 375 S.E.2d at 309.

Applying the Rozier factors, the panel first determined that the two conspiracies

occurred within hours of each other. Id. Second, the participants (i.e., the defendant

and his brothers) were the same, with the exception of a middle man for the drug buy

on 19 February 1987. Id. Third, the common objective was to traffic in cocaine,

notwithstanding the varying amounts of cocaine for each conspiracy. Id. Finally,

despite no evidence of meetings, the State argued at trial that this was a “continuing

conspiracy.” Id. The panel vacated one of the conspiracy convictions and remanded

for resentencing on the remaining conspiracy conviction. Id. at 534, 375 S.E.2d at

310.

 IV. Analysis

 I agree with defendant that the four Rozier cases are similar to the present

case. Each relevant factor is addressed in turn.

 A. Application of Rozier Factors

 i. Time Intervals

 The first Rozier factor is the time interval between each crime. It is implied

that time is a crucial factor because a short time interval between crimes signifies a

low possibility that an agreement can be made between each crime.
 9
 STATE V. STIMPSON

 Elmore, J., dissenting.

 The panel in each of the four Rozier cases found the respective time intervals

to be short. Griffin, 112 N.C. App. at 841, 437 S.E.2d at 392 (one month); Wilson, 106

N.C. App. at 346, 416 S.E.2d at 605 (two weeks); Fink, 92 N.C. App. at 533, 375 S.E.2d

at 309 (less than 24 hours); Medlin, 86 N.C. App. at 122, 357 S.E.2d at 179 (four

months). Although the defendants in the Rozier cases had plenty of time to meet or

make an agreement in between the crimes, the State did not present evidence of

meetings or agreements that occurred in between the crimes in those cases.

Moreover, the panels in those cases did not infer the presence of meetings or

agreements based on the time intervals.

 Here, the time interval in which the five robberies occurred is two to three

hours — much shorter than in any of the four Rozier cases. Notably, the longest time

interval cited by any of the Rozier cases is four months, yet the Medlin panel still held

that application of the Rozier factors resulted in a single conspiracy. Nevertheless,

the majority fails to credit the time interval of two to three hours in this case.

 ii. Participants

 The second Rozier factor is the specific participants involved in each crime.

This factor is significant because when the participants to each crime are completely

different, the State must prove separate conspiracies for each crime. However, when

 10
 STATE V. STIMPSON

 Elmore, J., dissenting.

the participants are the same, there could potentially be one conspiracy to commit

several crimes.

 In Medlin and Wilson, the same two individuals participated in each crime, but

a third individual participated in some but not all of the crimes. In Fink, the

defendant and his brother participated in each alleged crime, despite the SBI’s use of

a middle man to make the drug purchase. Regardless, the Wilson panel determined

that the addition or absence of one participant was “inconsequential.”

 That scenario is not present in this case. Here, as in Griffin, the participants

are the exact same in each of the five robberies.

 iii. Objectives

 The third Rozier factor is the objective of each alleged conspiracy. 69 N.C. App.

at 52, 316 S.E.2d at 902. When the objective of each alleged conspiracy is different,

this leans toward separate conspiracies. But when the objective of each alleged

conspiracy is same, this leans toward a single conspiracy.

 Each panel in the Rozier cases determined that the objective of each alleged

conspiracy was the same. The Medlin panel determined that the conspirators had

the common goal to “break or enter as many times as [they] could get away with.”

The Wilson panel concluded there was a common objective to acquire cash during the

 11
 STATE V. STIMPSON

 Elmore, J., dissenting.

several robberies, which was determined based on the nature of the robberies and the

testimony of a participant.

 Defendant’s case is most similar to Medlin. Here, the participants committed

a string of robberies early one morning over the course of a few hours before they

were caught by the police. Unlike Wilson, there was no testimony from a participant

about the objective, but the objective here can be determined based on the nature and

similarity of the crimes. Thus, the objective of each alleged conspiracy is to commit

an armed robbery, which leans toward a single conspiracy.

 iv. Meetings

 The final Rozier factor is the number of meetings among the participants. This

factor is crucial to determining the number of conspiracies because it tends to reflect

the number of agreements among the participants. To prove a single conspiracy, the

State must show an express or implied understanding of an agreement. Morgan, 329

N.C. at 658, 406 S.E.2d at 835. To prove two or more conspiracies, the State must

prove two or more separate agreements. Griffin, 112 N.C. App. at 840, 437 S.E.2d at

392. When the State proves multiple separate meetings among the participants, a

jury could infer multiple implied understandings, and thus multiple conspiracies.

See State v. Choppy, 141 N.C. App. 32, 40–41, 539 S.E.2d 44, 50 (2000), disc. rev.

denied, 353 N.C. 384, 547 S.E.2d 817 (2001).
 12
 STATE V. STIMPSON

 Elmore, J., dissenting.

 In Griffin, Wilson, and Fink, the State presented no evidence of any meetings

among the conspirators before, during, or after the crimes that would allow the jury

to infer implied understandings of agreements. Although the Medlin panel

determined that the participants met between the robberies, the purpose of the

meetings was to divide the spoils and plan the next robbery “in furtherance of the

original unlawful agreement.” One similarity in each Rozier case is that no panel

held that an implied understanding could be shown by the participants’ actions.

 As the majority notes, the State “offered no testimony concerning any

discussions between the co-participants before, during, or after each robbery,” similar

to Griffin, Wilson, and Fink. However, there is evidence that defendant spent the

evening prior to the robberies with the other two perpetrators. Although this may be

enough for a jury to find an implied understanding of an agreement for a single

conspiracy, I respectfully disagree with the majority’s conclusion that there is no error

in defendant’s convictions.

 The State failed to present substantial evidence of four meetings or agreements

among the participants. The State charged defendant with five conspiracies and,

under Griffin, was required to prove five separate meetings or agreements between

the participants. Defendant established an implied understanding for one agreement

when he testified that he and his fellow perpetrators met the night before the robbery.
 13
 STATE V. STIMPSON

 Elmore, J., dissenting.

This single meeting is only enough for the jury to infer a single conspiracy, and the

burden was on the State to present evidence of four other separate meetings or

agreements. However, the State impliedly admits that it failed to do this by arguing

on appeal that “[i]ndeed, there is no evidence present that any meetings ever took

place between the defendant and any of his fellow perpetrators.” (Emphasis added.)

Because the State did not present any evidence  substantial or not  of the

agreement element for four of the five conspiracies, the trial court should have

granted defendant’s motion to dismiss. The State argues there was an implied

understanding to commit each robbery based on the action of committing each

robbery. However, the panels in the Rozier cases did not find an implied

understanding based on the participants’ actions, and I believe it would be unwise to

depart from that precedent now.

 B. “Continuing Conspiracy”

 The Fink panel, like Wilson and Griffin, determined there was no evidence of

any meetings between any co-conspirator prior to or during the crimes. It held,

however, that there was a “continuing conspiracy” to commit a crime. Here, the

majority does not believe this is a continuing conspiracy because each crime was

“committed and completed before [d]efendant and his co-conspirators moved on and

happened upon and mutually agreed to rob and commit other crimes on their next
 14
 STATE V. STIMPSON

 Elmore, J., dissenting.

targets . . .” (Emphasis added.) I respectfully disagree. The five robberies at issue

here were completed in an exceedingly short time interval, the same participants

were involved in each robbery, there was a common objective to commit each crime,

and the State did not present evidence of five separate agreements between the co-

conspirators. Furthermore, the majority concludes that the participants mutually

agreed to commit these crimes without evidence of five separate agreements.

 C. Multiple Conspiracy Cases

 The majority cites to two cases from this Court to support its conclusion that

there were multiple conspiracies here. Both, however, are distinguishable from the

instant case.

 i. State v. Roberts

 In State v. Roberts, the State’s evidence showed the defendant engaged in two

robberies on consecutive nights in December 2002. 176 N.C. App. 159, 160–61, 625

S.E.2d 846, 848 (2006). Both robberies involved three masked perpetrators, and each

night, one perpetrator brandished a shotgun while another forced their victim to

perform fellatio on him. Id. at 161, 625 S.E.2d at 848. The State’s evidence also

revealed that, on the night of the first robbery, the defendant met with the other two

individuals from that robbery. Id. at 167, 625 S.E.2d at 852. It is unclear if those

two individuals were the same or different participants in the second robbery. The
 15
 STATE V. STIMPSON

 Elmore, J., dissenting.

defendant was convicted of, inter alia, four counts of conspiracy to commit the offenses

of first degree burglary and robbery with a dangerous weapon. Id. at 161–62, 625

S.E.2d at 848–49. The defendant appealed, arguing the State only proved a single

conspiracy. Id. at 166, 625 S.E.2d at 851.

 On appeal, the Roberts panel mentioned the Rozier factors but did not apply

them. Id. at 167, 625 S.E.2d at 852. Instead, the panel determined there was no

evidence that the agreement made among the defendant and his co-perpetrators was

meant to extend beyond the first robbery. Id. The panel stated that “[t]he mere fact

that the defendant was involved in a similar crime the next night does not indicate

the two crimes were committed as part of the agreement made on” the night of the

first robbery. Id. The Roberts panel ultimately overruled the defendant’s assignment

of error on the conspiracy convictions. Id.

 The majority cites to Roberts to show that our Court has upheld multiple

conspiracy convictions, but fails to see that Roberts indicates that defendant here

should have been charged with one conspiracy. In Roberts, the defendant was

charged with two counts of two different conspiracies, which required the State to

prove separate elements for each different conspiracy. It is not clear whether the

defendant in Roberts participated in each robbery with the same two perpetrators.

 16
 STATE V. STIMPSON

 Elmore, J., dissenting.

Assuming arguendo that the defendant was the only common perpetrator in each

robbery, then the defendant would have had to make two separate agreements.

 Here, the perpetrators in the five robberies were all the same, and defendant

was charged with five counts of conspiracy to commit robbery with a firearm. This

means the State had to prove each element of this conspiracy five separate times, but

the evidence only established the “agreement” element once. Thus, Roberts is

distinguishable from the case at bar, and I would not apply it.

 ii. State v. Glisson

 In State v. Glisson, the defendant sold oxycodone to an undercover officer on

three separate occasions. ___ N.C. App. at ___, 796 S.E.2d at 126. The first drug buy

in August 2012 was initiated by an informant with an undercover officer present,

while the second and third drug buys in September and December 2012 were initiated

by the undercover officer. Id. The defendant also brought the same third party to

each drug buy. Id. The trial court convicted the defendant of conspiracy to sell opium,

conspiracy to deliver opium, and conspiracy to possess with the intent to sell or

deliver opium. The defendant appealed, arguing that she engaged in one continuing

conspiracy. Id. at ___, 796 S.E.2d at 12728.

 On appeal, the Glisson panel applied the Rozier factors and found multiple

conspiracies. Id. at ___, 796 S.E.2d at 12829. First, the panel found that one month
 17
 STATE V. STIMPSON

 Elmore, J., dissenting.

passed between the first and second drug buys and two months passed between the

second and third. Id. at ___, 796 S.E.2d at 129. Second, even though the informant

was only present for the first drug buy, the participants were the same: the defendant,

her third party, and the undercover officer. Id. Third, even though the objectives

may have been similar, the amount of drugs varied. Id. Finally, and most

significantly, there was no meeting among the participants to engage in each drug

buy, and the defendant did not plan the next drug buy since each was initiated by

either the informant or the undercover officer. Id. This shows the defendant could

not have anticipated future drug buys and therefore had to separately agree to each

transaction. Id. Thus, the Glisson panel concluded there were multiple conspiracies.

Id.

 Again, the majority cites to Glisson to support its contention that our Court

has previously found multiple conspiracies, but it fails to acknowledge the factual

differences between the two cases. First, as in Roberts, the defendant in Glisson was

charged with three conspiracies related to three different incident offenses, which

required the State to prove separate elements for each conspiracy. Here, defendant

was charged with five counts of conspiracy for the same incident offense. Second,

even though the Glisson panel applied the Rozier factors, the “meeting” factor is

significantly different. In Glisson, it was determined there were no meetings between
 18
 STATE V. STIMPSON

 Elmore, J., dissenting.

the participants, except for the drug buys themselves, because the defendant did not

initiate the transactions and thus could not have anticipated the future drug buys.

Here, defendant spent the night prior to the robberies with his fellow perpetrators,

and a jury could infer that the purpose of this meeting was to plan and agree to

commit as many robberies as possible. Additionally, the State presented no evidence

of any other meetings prior to or during the robberies. Coupled with the other Rozier

factors, this indicates a single conspiracy. This case is therefore distinguishable from

Glisson.

 V. Conclusion

 The majority declines to apply Rozier and its progeny to this case,

effectively overlooking years of precedent from this Court. I, however, would apply

the Rozier factors to defendant’s case. First, the time interval was a few hours – much

shorter than in Medlin, Wilson, Griffin, or Fink. Second, the participants in the five

robberies appear to be the same: defendant and the two men he met earlier that night.

Third, the objective of each crime is the same: to commit robbery with a dangerous

weapon. Finally, the State presented no evidence of any meetings between defendant

and the co-conspirators prior to or during the robberies. Although the jury could find

an implied understanding to commit a robbery based on defendant’s testimony that

he spent the evening prior to the robberies with the other two perpetrators, this only
 19
 STATE V. STIMPSON

 Elmore, J., dissenting.

supports one conspiracy conviction; the State failed to present evidence of four other

separate meetings or agreements. Similar to Medlin, the facts here show one

agreement to commit as many robberies as possible.

 Applying Rozier, I believe defendant committed only one conspiracy. I would

therefore hold that the trial court erred by failing to dismiss the four other counts of

conspiracy to commit robbery with a firearm, and I would vacate four of defendant’s

five conspiracy convictions and remand for resentencing on the remaining one. See,

e.g., Rozier, 69 N.C. App. at 54, 316 S.E.2d at 903 (holding that the earliest conspiracy

conviction should stand when more than one conspiracy is charged but only one is

proven). I respectfully dissent from the majority’s decision to uphold four of

defendant’s conspiracy convictions.

 20